FARMERS INDEPENDENT TELEPHONE COMPANY, Luck Telephone Company, Milltown Mutual Telephone Company, Siren Telephone Company, Amery Telephone Company, Solon Springs Telephone Company, Osceola Telephone Company, St Croix Telephone Company, Somerset Telephone Company and Baldwin Telecom, Inc., Plaintiffs,

v.

Glyn THORMAN, d/b/a Blue Pages Communications and d/b/a Great Northwest Communications, Defendant.

No. 86–C–660–S.

United States District Court, W.D. Wisconsin.

Nov. 28, 1986.

John W. Markson, Bell, Metzner & Gierhart, Madison, Wis., for plaintiffs.

Timothy J. Laux, Osceola, Wis., for defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court is plaintiffs' motion for a preliminary injunction pursuant to 17 U.S.C. § 502. Plaintiffs, who are publishers of several copyrighted telephone directories in northwest Wisconsin, seek to enjoin defendant Glyn Thorman (and the businesses operated by him as sole proprietorships) from publishing or marketing any work infringing on these copyrighted directories. Jurisdiction is conferred by 28 U.S.C. § 1338(a).

### FACTS

The underlying facts of this dispute, which will be expanded upon below, are as follows. All of the plaintiffs are telephone exchange carriers providing telephone services to several communities in northwest Wisconsin. They each publish a telephone directory containing an alphabetical list of the persons served by the company, listed according to municipality. Commonly called the "white pages," these lists appear two columns to a page according to last name, followed by address and telephone number. The directories also contain "yel-

low page" listings of business customers, listed alphabetically according to type of business and interspersed with display advertising. Each of the plaintiffs has been granted copyright registration on its directories for several years.

Defendant Glyn Thorman has for some time published a competing directory. In 1984, under the business name of "Blue Page Communications" he published the "Registry: Polk County Area Phone Directory." In 1986, under the business name of "Great Northwest Communications" he published three "Registry" directories denominated the Southern, Central and Northern editions.[1] In all Registries defendant alphabetically listed names of individuals from a broader area than those covered by plaintiffs' Directories. The Registries were larger, listed the names in four columns rather than two, and did not list street addresses as did the Directories, but merely designated the municipality of the person listed. In the 1986 Registries any given last name was listed only once, with particular first names indented and listed thereafter. The 1984 Registry contained a "Blue Page" directory comparable to the plaintiffs' "Yellow Pages," and the 1986 Registries contained a "Yellow Pages" directory, again comparable to that of plaintiffs. These parts of the Registries are not the subject of plaintiffs' claims, but are the subject of a counterclaim by defendant. Defendant has also received a copyright registration for his Registries.

## MEMORANDUM

The four factors which enter into the Court's exercise of its discretion to enter a preliminary injunction are:

(1) Whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue;

(2) Whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant;

(3) Whether the plaintiff has at least a reasonable likelihood of success on the merits; and

(4) Whether the granting of a preliminary injunction will disserve the public interest.

*Atari v. North American Phillips*, 672 F.2d 607, 613 (7th Cir.1982), cert.den. 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145. Although whether plaintiffs have a reasonable likelihood of success on the merits is a threshold inquiry, *id.*, the other three factors have a substantial impact on the kind of showing demanded of a plaintiff on this threshold inquiry. *See General Leaseways v. National Truck Leasing Ass'n*, 744 F.2d 588 (1984). As a general proposition, the more compelling the showing that the movant will succeed on the merits, the less compelling need be his showing on the other factors. The opposite is also true.

Largely by citation to the Eighth Circuit decision in *Hutchinson Telephone Company v. Frontier Directory Co.*, 770 F.2d 128, 133 (8th Cir.1985), the plaintiffs argue that the public interest is served by the granting of an injunction by virtue of the fact that any lost revenues from the Directories will adversely affect ratepayers. This Court does not find this argument particularly convincing because it has the impact of extending the advantages of being a regulated monopoly to an unregulated arena. The correct inquiry, as *General Leaseways* makes clear, is to consider the gravity of an incorrect decision:

[T]he heart of the four-factor test is a comparison of the likelihood, and the gravity, of two types of error: erroneously granting a preliminary injunction, and erroneously denying it.

744 F.2d at 590. In this case an erroneous grant of the injunction will diminish, if not destroy, competition in the marketing of directory advertising. An erroneous denial will, for the short period between now and

---

**1.** Hereinafter, all of plaintiffs' publications will be referred to as "Directories" and all of defendant's publications will be referred to as "Regis-tries." The term "directories" will be treated as a generic term.

a final decision on the merits, allow an infringing work to be distributed. Although copyright law has direct constitutional blessing, Article I, Section 8 of the Constitution is not self-executing. Congress had the authority to provide protection for the kind of intellectual property at issue here, just as it had the authority to enact anti-trust legislation. The public interest, as it finds expression in these statutes, does not compel a conclusion either way.

An analysis of the balance of the harms between the parties leads inescapably to the conclusion that plaintiffs' showing of the likelihood of success on the merits must be very strong in order to prevail on the motion. Irreparable harm to the plaintiff may be presumed in copyright cases upon a showing of a reasonable likelihood of success on the merits. *Atari*, 672 F.2d at 620. The Court of Appeals also noted that loss of profits by one enjoined from infringing a copyright is worthy of little equitable consideration:

> Advantages built upon a deliberately plagarized make-up do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed.

*Id.* (citation omitted.) However, it appears from the very wording of the balance of harms factor to be considered by this Court that, when assessing the harm to the defendant the Court should assume that the harm is that which flows from an erroneous grant of an injunction. At this stage, in other words, the Court is compelled to assume that the harm to defendant is not built upon an advantage taken from the plaintiffs. This is the implicit holding of *General Leaseways*, although the court in that case found *de minimis* harm to the defendant. This Court cannot so find in this case. Common sense, let alone defendant's assertions, dictates that defendant has very little of value to offer to advertisers if his Registry does not contain white page listings. Persons inclined to let their fingers do the walking through the yellow pages go to their telephone book. Defendant's selling point is that his telephone book is better than that offered by plaintiffs because his white page listings cover a broader area than any one of the other Directories.

This is not to say that plaintiffs suffer no harm. They do. Common sense also dictates that their argument that some advertisers have taken smaller ads in the Directories so they can also advertise in defendant's Registry has merit. Thus, their harm is not *de minimis* either. But it is very apparent that such harm is dwarfed by that which would be suffered by defendant should the injunction issue. It is of no little consequence that the timing of this proceeding runs very close to the printing and distribution of defendant's latest Registries. Having obviously sold advertising on the assumption of a particular kind of publication (and priced advertising accordingly), an injunction may very well be lethal.

Having said all of this, the Court must demand a very strong showing of likelihood of success on the merits from plaintiffs. Because defendant may suffer lethal business consequences by the grant of an injunction, plaintiffs must convince the Court that they are almost certain to win. Compare *General Leaseways, supra,* where it was enough for the movant to raise a substantial question on the merits when the balance of harms strongly favored the movant.

The analysis of the merits of this dispute must rely very heavily on *Atari, supra.* That case was in a posture very similar to this one. Here, as there, defendant does not dispute the validity of plaintiffs' copyrights. He concedes the correctness of the decision in *Hutchinson, supra,* 770 F.2d at 132, and *Leon v. Pacific Telephone & Telegraph,* 91 F.2d 484 (9th Cir.1937), at least to the extent that these cases hold that telephone white page directories are copyrightable.

Defendant also concedes access to the copyrighted work, just as the *Atari* defendant did. *Id.* 672 F.2d at 614. Thus, the only remaining question is the second part

of the copying element of a copyright infringement claim. That question is whether his Registries are "substantially similar" to plaintiffs' copyrighted Directories. Substantial similarity, coupled with access, raises the inference that the accused work was copied from the copyrighted work. *Id.*

The test of "substantial similarity" under such circumstances is also in two parts:

> (1) Whether the defendant copied from plaintiffs' work; and
>
> (2) whether the copying, if proven, went so far as to constitute an improper appropriation.

*Id.* (Citations omitted.) This reasoning seems to this Court to be circular: It was copied if it is substantially similar, and is substantially similar if it was copied and such copying was an improper appropriation. Fortunately, the Court of Appeals more clearly stated what was meant by the substantial similarity test:

> Specifically, the test is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.

*Id.* (Citations omitted.) The Court of Appeals went on to explain that the ordinary observer test must take into account the fact that only the elements of a work that are protected by copyright cannot be appropriated. It extends only to the expression of an idea, not the idea itself. *Id.* at 614–15. Although this dichotomy is now expressed in the statute itself, at 17 U.S.C. § 102(b), it has been prevalent since *Baker v. Belden,* 11 Otto 99, 101 U.S. 99, 25 L.Ed. 841 (1879).

It is defendant's contention that in this case the idea and expression merge, and that in such cases the scope of protection afforded by a copyright is practically limited to a prohibition of duplication. The *Atari* case strongly supports this contention. The Court of Appeals cited the following language from *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738 (9th Cir.1971):

> When the "idea" and its "expression" are thus inseparable, copying the "expression" will not be barred, since protecting the "expression" in such circumstances would confer a monopoly of the "idea" upon the copyright owner free of the conditions and limitations imposed by the patent law.

*Id.* at 742; *Atari,* 672 F.2d at 616. *Kalpakian* was concerned with the scope of protection to be afforded to a jewel encrusted pin in the form of a bee, the defendant having been accused of appropriating the design. The court refused to find substantial similarity because the defendant's bee was no more similar to plaintiff's bee than was necessary to express the same idea. Likewise, the *Atari* court refused to find certain aspects of the "Pac-Man" video game protectible on the ground that they fell on the least protectible end of the spectrum:

> As a work embodies more in the way of particularized expression, it moves farther way from the bee pin in *Kalpakian,* and receives broader copyright protection. At the opposite end of the spectrum lie the "strongest" works in which fairly complex or fanciful artistic expressions predominate over relatively simplistic themes and which are almost entirely products of the author's creativity rather than concomitants of those themes.

*Id.* at 617. At the weaker end of the spectrum, several of the elements of the "Pac-Man" game were held to be protected only from "virtually identical copying." These included the maze and the scoring table, the use of "tunnel exits," and dots which are devoured by the hero of the game as the mechanism for scoring points. *Id.* These were held to be elements which were, for practical purposes, essential to any video maze game. Other elements, particularly the "substantial appropriation" of the game's characters, were held to be expressions which distinguished "Pac-Man" from other maze games and thus protected by copyright.

The ordinary observed test as illustrated by *Atari* leads to the conclusion that plain-

tiffs are not entitled to an inference of copying. Given the virtual identity between idea and expression here, it is clear that copying should not be inferred short of virtually identical duplication. Of course, this does not mean that plaintiffs cannot show copying by more direct methods. They have attempted to do so.

It must be conceded here that defendant did not identically copy plaintiffs' copyrighted Directories. He merged the separate listings for different municipalities. He also presented them in different typeface, in more columns on a larger page, and, in the 1986 Registries, listed only the first names of those sharing a common last name. He also asserts that he purged from his lists some erroneous or outdated entries from the Directories, again by his individual effort. It also must be conceded, however, that defendant used the plaintiffs' Directories in generating his Registries to some significant, albeit uncertain, extent. Proof of that fact is defendant's deposition testimony and the evidence that several errors and fictitious listings from the Directories also appear in the Registries. Mere rearrangement, at any rate, does not defeat an infringement claim. *Leon, supra.*

A crucial factual predicate is missing from the findings of fact offered by the plaintiffs. The facts show the existence of copyright registration on their Directories, one as early as 1979, while others were not copyrighted until 1985. The existence of erroneous or fictitious entries in the copyrighted Directories does not exclude the possibility that such entries also existed in the earlier, uncopyrighted Directories. Defendant's admission that he used plaintiffs' Directories in generating the original data base for the Registries could be an admission only with respect to the earlier uncopyrighted Directories.

The Court does not have a difficult legal question with respect to whether there is an infringement when a party uses copyrighted material as an initial source for production of another compilation of the same type. Such use amounts to copying (despite defendant's disingenuous statements in this regard) and is thus an infringement. In *Rockford Map Publishers, Inc. v. Directory Service Co. of Colorado, Inc.*, 768 F.2d 145 (7th Cir.1985), the Court made this point very clear:

> Everyone must do the same basic work, the same "industrious collection." "A subsequent compiler is bound to set about doing for himself what the first compiler has done." ... The second compiler must assemble the material as if there had never been a first compilation; only then may the second compiler use the first as a check on error.

*Id.* at 149. This was also the principle which dictated the result in *Schroeder v. William Morrow & Co.*, 566 F.2d 3 (7th Cir.1977), a case very similar to this one where the second compiler of a list of gardening equipment suppliers produced an abbreviated version of the first compiler's list without independent effort.

These cases would dictate the grant of a preliminary injunction but for plaintiffs' failure to show that the initial source of the lists in defendant's Registries were the copyrighted, rather than uncopyrighted, Directories. This is not to say that defendant has proven that the uncopyrighted Directories were the source. He certainly has not. However, it is plaintiff's initial burden which has not been met. Plaintiffs' likelihood of success is marginal at best. It is clearly not strong enough to overcome the strong balance of harms in defendant's favor.

Accordingly,

### ORDER

IT IS ORDERED that plaintiffs' motion for a preliminary injunction is DENIED.

Raleigh Newman, Lake Charles, La., for plaintiff.