## LEON et al. v. PACIFIC TELEPHONE & TELEGRAPH CO.

### No. 8397.

Circuit Court of Appeals, Ninth Circuit.

July 19, 1937.

Jas. M. Naylor and Arthur P. Shapro, both of San Francisco, Cal., for appellants.

Alfred Sutro, Norbert Korte, and Samuel L. Wright, all of San Francisco, Cal. (Pillsbury, Madison & Sutro, of San Francisco, Cal., of counsel), for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decree restraining infringment of copyright.

Appellee, Pacific Telephone & Telegraph Company, brought a suit in equity in the District Court to restrain appellants from infringement of appellee's copyright in the May, 1935, issues of appellee's San Francisco and East Bay telephone directories. The bill alleged the copyright duly issued covering these telephone books and set out that the defendants had infringed it by their publication of a "numerical telephone directory"—that is to say, they

had taken the information contained in plaintiff's alphabetical directory and published it in rearranged form, classifying it according to "exchanges" or prefixes, and listing the numbers under each exchange in numerical consecutive order. The number was followed by the subscriber's name.

The bill prayed for temporary and permanent injunctions, damages and costs, and that the defendants be required to deliver up for destruction all the infringing copies as well as all plates, molds, matrices, or other means of making such infringing copies.

The defendants answered, denying the validity of the copyright and the charge of infringement, and also alleged that defendants' use of plaintiff's material was a "fair use" and hence not an infringement.

Trial was had and findings of fact and conclusions of law were made to this effect:

That since October, 1908, plaintiff had caused to be printed and distributed to its subscribers, at frequent intervals, alphabetical directories of the subscribers with their addresses and telephone numbers, all of which have been duly copyrighted, including the May, 1935, issues.

That the copyrights were valid.

That defendants had compiled, published, and sold to the public numeral directories entitled "Numerical Telephone Directory, San Francisco and other Cities and Towns, 1935-36" and "Numerical Telephone Directory, Oakland, Berkeley, Alameda, San Leandro, 1935," the same being compiled exclusively from the plaintiff's alphabetical directories.

That such action constituted infringement of the plaintiff's copyright.

That "The collection, editing, compilation, classification, arrangement, preparation of the material in said directories [plaintiff's] involved a large amount of detail and required great effort, discretion, judgment, painstaking care, skill, labor, accuracy, experience and authorship of high order. Said telephone directories were the sole and exclusive property of plaintiff, and plaintiff possessed the sole and exclusive literary and other rights therein, including the right to copy. Said directories constitute new and original literary works, and are the proper subject of copyright. Said copyrights are existing and plaintiff is the sole and exclusive owner, author and proprietor thereof."

The court entered a final decree permanently restraining the defendants from printing, publishing, selling, disposing of, etc., the infringing work; requiring them to deliver up for destruction all copies of the numerical directory and all plates, molds, matrices, or other means for making the directories, and awarding costs against them.

The appeal in this case raises three questions:

(1) Whether plaintiff has a valid copyright.

(2) Whether defendants' actions constituted an infringement.

(3) Whether or not the court should have dismissed the action as to Dagmar Leon, the contention of defendants being that she was not shown to have participated actively in the alleged infringement.

(1) *Validity of the copyright.* That all formal steps necessary to perfect the copyright were taken is admitted by the defendants. Their contention here is that a directory represents nothing new or original and hence is not a proper subject of copyright. The District Court found otherwise, as the above quotation shows. Defendants introduced no evidence to contradict that finding. The plaintiff offered evidence as to how the 1935 directory was constructed. A person desiring telephone service, who was not listed in the previous directory, filled out an application card, and a telephone number was assigned to him. Then his name, address, and assigned number was typed on a slip of paper. Each page from the old directory was cut out and pasted on a sheet of paper and the new subscriber's slip was pasted alongside, preserving the alphabetical order. Subscribers in the old directory whose numbers had been discontinued, were penciled out of the page cut from the former volume. The paper sheets, with the penciling out of discontinued subscribers and the adjoining data on new subscribers were sent to the printer who made up a new page incorporating the changes.

The San Francisco listings of the directory alleged to be infringed totaled 160,266, and the East Bay listings 97,512. The total cost of producing these directories was $295,222. One hundred persons are regularly employed by plaintiff in its directory department.

It is obvious from this evidence that the business of getting out a directory is

an expensive, complicated, well-organized endeavor, requiring skill, ingenuity, and original research. Unless the product of such activity is by its very nature not subject to copyright, plaintiff's directories are certainly entitled to copyright protection in the case at bar.

 That a directory may be copyrighted is well settled. The principle is recognized in the statute (Act of March 4, 1909, c. 320, § 5, 35 Stat. 1076; 17 U.S.C.A. § 5):

The application for registration shall specify to which of the following classes the work in which copyright is claimed belongs:

"(a) Books, including composite and cyclopedic works, *directories*, gazetteers, and other compilations." (Italics supplied.)

A city directory may be copyrighted. Sampson & Murdock Co. v. Seaver-Radford Co. (C.C.A.1) 140 F. 539, 542.

In Jeweler's Circular Pub. Co. v. Keystone Pub. Co., 281 F. 83, at page 88, 26 A.L.R. 571, the Circuit Court of Appeals for the Second Circuit held copyrightable a directory of jewelers' trade-marks:

"The right to copyright a book upon which one has expended labor in its preparation does not depend upon whether the materials which he has collected consist or not of matters which are publici juris, or whether such materials show literary skill or originality, either in thought or in language, or anything more than industrious collection. The man who goes through the streets of a town and puts down the names of each of the inhabitants, with their occupations and their street number, acquires material of which he is the author. He produces by his labor a meritorious composition, in which he may obtain a copyright, and thus obtain the exclusive right of multiplying copies of his work."

In Bleistein v. Donaldson Co., 188 U. S. 239, 250, 23 S.Ct. 298, 300, 47 L.Ed. 460, the court observed:

"The least pretentious picture has more originality in it than directories and the like, which may be copyrighted."

In National Tel. News Co. v. Western Union Tel. Co. (C.C.A.7) 119 F. 294, 297, 60 L.R.A. 805, it was said:

"Little by little copyright has been extended to the literature of commerce, so that it now includes books that the old guild of authors would have disdained; catalogues, mathematical tables, statistics, designs, guide-books, directories, and other works of similar character. Nothing, it would seem, evincing, in its makeup, that there has been underneath it, in some substantial way, the mind of a creator or originator, is now excluded."

Defendants seek to use this last case as an authority for their contention. The case holds that news printed by a teletype mechanism is not subject to copyright. This holding is of no help to defendants.

It must be concluded, in view of these decisions, that plaintiff's copyright is valid.

(2) *Infringement.* The defendants admit that they appropriated the material for their numerical directory from the plaintiff's copyrighted works. The only difference between the two directories is that that of the defendants omitted the listed parties' addresses and gave the rest of the information in inverted form. To take an example, the plaintiff's directory lists alphabetically,

"Smith, John Joseph r 104 Chattanooga ATwater 3670."

The defendants' directory is divided into sections representing exchanges or prefixes. Under the Atwater section occurs the item

"3670 Smith J. J.".

 It is not denied that this constitutes copying, nor do defendants contest the well-settled proposition that the owner of a copyright enjoys the exclusive right to multiply copies of his work. But the defendants assert that this copying in a rearranged form constitutes "fair use" of the protected material and hence is not an infringement.

It is not necessary in the case before us to discuss generally the question of what constitutes "fair use." Obviously, every publication copyrighted admits of many uses which do not constitute infringement. Counsel have not disclosed a single authority, nor have we been able to find one, which lends any support to the proposition that wholesale copying and publication of copyrighted material can ever be fair use. The defendants' contention in this regard rests entirely on the proposition that the numerical directory serves a different purpose than plaintiff's alphabetical directory.

The fact that plaintiff has not chosen to arrange its material in the inverted form

used by appellants is no determinant of fair use. The inversion, without license, is not permitted merely because the holder of the copyright has not so used it. This is settled by the case of Fox Film Corporation v. Doyal, 286 U.S. 123, 127, 52 S. Ct. 546, 547, 76 L.Ed. 1010, where the Supreme Court said:

"The owner of the copyright, if he pleases, may refrain from vending or licensing and content himself with simply exercising the right to exclude others from using his property."

A like conclusion has been expressed by the courts of England. Weatherby & Sons v. International Horse Agency and Exchange, Ltd., [1910] 2 Ch. 297, 304; 79 L.J.Ch. 609. This case deals with the claimed infringement of the copyright of a stud book published periodically. The defendants made use of the material in this book and of another book which had originated a figure system for rating breeding race horses. The infringing work was a sort of combination of the two. The court said:

"Then it is said that the real and only test as to whether or not the defendants have made an unfair use of volume 21 of the Stud Book lies in the answer to the question whether there will be any competition between such volume and the defendant's book. * * * But, in my opinion, an unfair use may be made of one book in the preparation of another, even if there is no likelihood of competition between the former and the latter. After all copyright is property, and an action will lie even if no damage be shown. In the present case there may not be much probability that any one will buy the defendants' book instead of volume 21 of the Stud Book, but the fact remains that in preparing this book the defendants have utilized, wholesale and without permission, lists prepared by the plaintiffs at much trouble and expense. In so doing they have appropriated the result of this labor and expense to their own use, and even if they have injured the plaintiffs in no other way, they have at any rate deprived them of the advantage, which their copyright conferred on them, of being able to publish such a book as the defendants' book at much less labor and expense than anyone else."

And in H. Blacklock & Co. v. C. Arthur Pearson, Ltd., [1915] 2 Ch. 276, 383, the court said:

"* * * But in all events it appears to me that the defendants took a substantial portion of the list of names contained in the index to the plaintiffs' publication, thus without an exertion of their own getting the benefit of the labour and expense expended in compiling the list which formed the index to Bradshaw. * * * I come to the conclusion that what was done by the defendants was an infringement of the copyright of the plaintiffs."

One point remains for consideration. Defendant Dagmar Leon contends the action should have been dismissed as to her, she being no more than an employee of her husband, the defendant Fred S. Leon, with no discretion, judgment, or responsibility as to the conduct of the business.

The point is without merit. The evidence shows Dagmar Leon to have been much more than an employee. Particularly is this shown by a letter to an agent of the Pacific Telephone & Telegraph Company, signed by Dagmar Leon, discussing prospects of the Pacific Telephone & Telegraph Company taking over the business belonging to Dagmar and Fred Leon. The letter discusses terms and conditions of the project in such fashion to show that the writer was a responsible figure in the management of the Numerical Directory concern.

Affirmed.