**Lisa LITCHFIELD, Plaintiff-Appellant,**

v.

**Steven SPIELBERG; MCA Inc.; Universal City Studios, Inc.; Extra-Terrestrial Productions; Kathleen Kennedy; Ned Tanen; and Melissa Mathison, Defendants-Appellees.**

**No. 83–6045.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 1984.

Decided July 6, 1984.

Ralph Francis Server, Los Angeles, Cal., for plaintiff-appellant.

Louis P. Petrich, Youngman, Hugate & Leopold, Los Angeles, Cal., for defendants-appellees.

Before WRIGHT, FERGUSON, and REINHARDT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The issues: (1) Did the producers of the motion picture, *E.T.,—The Extra Terrestrial,* infringe the copyright of a musical play, *Lokey from Maldemar,* and (2) was summary judgment proper on the issue of substantial similarity?

Litchfield wrote and copyrighted *Lokey from Maldemar.* Subsequently the defendants produced *E.T.*

Litchfield sued for copyright infringement, unfair competition, and various state claims, alleging that *E.T.* was copied from her play. The district court granted defendants' motion for summary judgment on the copyright claim and dismissed the remaining claims.

On appeal, the main question is whether summary judgment was proper on the issue of substantial similarity. We hold that it was.

FACTS

The district judge's findings of fact of June 10, 1983 state the case accurately:

Plaintiff Lisa Litchfield is the author of a one-act play entitled "Lokey from Maldemar." Litchfield wrote the play in 1978, and public performances were given in Los Angeles in September 1978. Subsequently, she submitted a copy of "Lokey" to defendant Universal City Studios, Inc., in the hope that the work would be purchased for purposes of developing a motion picture. These aspirations were disappointed, however, when Universal rejected "Lokey" as unsuitable for film treatment in October 1979. Nonetheless, plaintiff continued her efforts to market the work, adapting a "screenplay outline" of "Lokey" in 1980 from the 1978 theatrical version. Despite repeated efforts to find a receptive buyer for her works, plaintiff failed to find success in Hollywood.

As originally developed in 1978, "Lokey" was a musical play about the adventures of two aliens, Fudinkle and Lokey, who are temporarily stranded on Earth when their spacecraft is immobilized by gravity. After landing near the North Pole, the aliens meet Lisa Marie, her younger brother Michael, and their father, a scientist stationed at the Sorenson Research Center at the North Pole. After temporarily detaining the children with an energy field, the aliens quickly learn English and are invited home by Lisa Marie to meet her father. At the cabin, Lokey demonstrates his extraordinary extra-terrestrial powers by psychokinetically taking a gun away from her father; reviving the father from a heart attack; projecting a map of the Earth on the cabin wall through mind power; and revealing his own destiny as a future ruler of his planet. Lisa Marie demonstrates her own terrestrial charms, teaching Lokey to kiss and inducing him to promise to send "mind pictures" to her after the aliens' departure. Fudinkle and Lokey then travel to a beach in Japan, where they capsize a fishing boat filled with porpoise hunters. Next, the aliens travel to the Andes Mountains, where they meet Tollie Marx, a prophetic witch. Finally, all of the characters appear on the

edge of the Pacific Ocean, where the aliens bid the humans farewell as they return to their ship.

On June 11, 1982, the defendants' film "E.T.—The Extraterrestrial" opened at commercial movie theaters. "E.T." is the story of a small alien accidentally left behind when his fellow explorers are forced to hastily leave Earth. E.T. is lured, by hunger and curiosity, into the California suburban home of 10-year-old Elliot, his brother and sister, and their mother. During the following days, E.T. learns a few words of English; discovers television, beer, and other appurtenances of contemporary American life; and constructs a transmitter to "phone home." The children, in turn, learn that E.T. possesses unearthly powers: E.T. levitates objects through psychokinesis; heals a small cut with his glowing finger; revives a wilted flower; and establishes a psycho-physical empathy with Elliot. Yet E.T.'s powers are not total; as time passes, E.T. gradually deteriorates. After an apparently unsuccessful attempt to contact his people, E.T. is captured by the scientific investigators who have stalked his existence since he was left behind by his spaceship. Following his capture E.T. appears to have expired, but he revives when he senses that his people are returning for him. A chase ensues, and the film concludes with E.T. bidding farewell to earthling friends and returning home.

Litchfield sued for copyright infringement, violation of the Lanham Act, unfair competition, misrepresentation of story authorship, breach of implied in fact contract and breach of confidence. On February 9, 1983, the district court dismissed the Lanham Act, state unfair competition and misrepresentation of story authorship claims. Plaintiff appealed this interlocutory order, but asked for and was granted voluntary dismissal in August, 1983.

On June 16, 1983, the district court granted summary judgment to the defendant on the copyright infringement claim and dismissed the pendent state claims.

Plaintiff filed notice of appeal of the summary judgment order on July 13, 1983.

### A. Subject Matter Jurisdiction

Defendants question the court's jurisdiction over the unfair competition and misrepresentation of story authorship claims because the July 13 notice of appeal did not name these claims.

■■■ A mistake in designating the judgment appealed from does not cause the loss of the appeal as long as intent to appeal from a specific judgment can be fairly inferred from the notice, and appellee is not misled by the mistake. *Munoz v. Small Business Administration*, 644 F.2d 1361, 1364 (9th Cir.1981). An appeal from a final judgment draws in question all earlier, non-final orders and rulings which produced the judgment. *Id.* Here, the premature appeal of the interlocutory order had been filed and served, and the issues were fully briefed. Defendants have shown no prejudice resulting from our review of these claims.

### B. Copyright Infringement

#### (1) Elements

■ To prove copyright infringement, the plaintiff must show (1) ownership of the copyright, (2) access to the copyrighted work, and (3) substantial similarity between the copyrighted work and the defendant's work. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir.1977). The parties agree that plaintiff owns the copyright to *Lokey*. For the purposes of the motion for summary judgment, defendants concede they had access. The only issue is whether summary judgment was proper as to substantial similarity.

■ Substantial similarity is usually an extremely close issue of fact and summary judgment has been disfavored in cases involving intellectual property. *Twentieth Century-Fox Film Corporation v. MCA, Inc.*, 715 F.2d 1327, 1330 n. 6 (9th Cir.1983). It is appropriate, however, if reasonable minds could not differ as to the absence of

substantial similarity in expression. *See v. Durang*, 711 F.2d 141, 143 (9th Cir.1983).

██ We review the propriety of summary judgment *de novo*. *Twentieth Century-Fox*, 715 F.2d at 1328. The evidence and inferences must be viewed in the light most favorable to the plaintiff. *Id.*

### 2. *Comparison of E.T. and Lokey*

██ Before considering a motion for summary judgment on the issue of substantial similarity, the court must make a detailed comparison of the allegedly infringing and infringed works. To this end, the district judge (1) read the 1978 and 1980 versions of *Lokey*, (2) read the "continuity" script of *E.T.*, and (3) viewed *E.T.* at defendants' screening room.

Litchfield claims that it was prejudicial error to view *E.T.* outside the presence of her counsel. She alleges that the version of *E.T.* shown may have differed in some material respects from the version that is shown publicly.

██ There is no record that Litchfield objected formally to the showing of *E.T.*, nor does it appear that she asked to review the film. We will not review an issue not raised or objected to below unless necessary to prevent manifest injustice. *Komatsu, Ltd. v. States Steamship Co.*, 674 F.2d 806 (9th Cir.1982).

Our *de novo* review of the issue of substantial similarity removes any prejudice that might have resulted from this alleged error. We need not consider it.

Our own, independent review of the works is based on reading of (1) the two versions of *Lokey*, and (2) the continuity script of *E.T.* We express no opinion whether reading a continuity script will suffice to allow comparison of a motion picture with other works in all cases. *Cf. Dellar v. Samuel Goldwyn, Inc.*, 104 F.2d 661 (2d Cir.1939). In this instance, comparison based on the continuity script is permissible because neither party has claimed that the continuity varies from the movie. *See Jason v. Fonda*, 698 F.2d 966 (9th Cir.1982), *incorporating by reference*, 526 F.Supp. 774, 777 (C.D.Cal.1981).

### 3. *Summary Judgment on the Issue of Substantial Similarity*

We may uphold summary judgment if no reasonable jury could find substantial similarity between *E.T.* and *Lokey*. *See v. Durang*, 711 F.2d at 143.

██ To prove infringement, a plaintiff must show that the works are substantially similar in both *ideas* and *expression*. *Sid & Marty Krofft*, 562 F.2d at 1164.

██ Similarity of ideas may be shown by an extrinsic test which focuses on alleged similarities in the objective details of the works. *Id.* The extrinsic test requires a comparison of plot, theme, dialogue, mood, setting, pace and sequence. *Jason v. Fonda*, 698 F.2d 966 (9th Cir.1982), *incorporating by reference*, 526 F.Supp. 774, 777 (C.D.Cal.1981).

██ Similarity of expression depends on a subjective, intrinsic test. This test focuses on the response of the "ordinary reasonable person" to the works. *Sid & Marty Krofft*, 562 F.2d at 1164.

Litchfield relies on a list of similarities between *Lokey* and *E.T.* to show the extrinsic similarity of the works. She argues that there are too many similarities, especially in the sequence of events and incidents leading to the climax, for the court to determine that there is no material issue of fact.

While we have relied on such lists of similarities in the past for "illustrative purposes," *Twentieth Century-Fox*, 715 F.2d at 1329 n. 5, they are inherently subjective and unreliable. We are particularly cautious where, as here, the list emphasizes random similarities scattered throughout the works. *See McMahon v. Prentice Hall, Inc.*, 486 F.Supp. 1296, 1304 (E.D.Mo. 1980).

Viewed in the light most favorable to the plaintiffs, some similarities in the opening scenes of *Lokey* and the movie *E.T.* may be more than stock scenes. There is no sub-

stantial similarity, however, between the sequences of events, mood, dialogue and characters of the two works. Any similarities in plot exist only at the general level for which plaintiff cannot claim copyright protection. *See Jason,* 526 F.Supp. at 777.

■ There is even less similarity of expression. To constitute infringement of expression, the total concept and feel of the works must be substantially similar. *Sid & Marty Krofft,* 562 F.2d at 1164. The concept and feel of the works here are completely different.

■ Whereas *E.T.* concentrates on the development of the characters and the relationship between a boy and an extra-terrestrial, *Lokey* uses caricatures to develop its theme of mankind divided by fear and hate. No lay observer would recognize *E.T.* as a dramatization or picturization of *Lokey. See Bradbury v. Columbia Broadcasting System, Inc.,* 287 F.2d 478, 484 (9th Cir. 1961); *Kustoff v. Chaplin,* 120 F.2d 551, 559 (9th Cir.1941).

## C. *Production of a Derivative Work*

Litchfield argues that defendants violated section 106(2) of the Copyright Act, 17 U.S.C. § 106(2) (1982), by preparing a derivative work based on *Lokey.* The district court did not address this issue.

■ Section 106(2) grants the exclusive rights to prepare a derivative work to the holder of the copyright. 17 U.S.C. § 106(2). To constitute a violation of section 106(2) the infringing work must incorporate in some form a portion of the copyrighted work. Notes of the Committee on the Judiciary, House Report No. 94–1476, *reprinted in* 17 U.S.C. § 106(2) (1982).

Litchfield argues that section 106(2) was intended to expand the definition of derivative works to include any work based on a copyrighted work. She argues that the similarities between her play and the movie constitute the required "incorporation" and show that *E.T.* was based on *Lokey* for purposes of the statute. Litchfield apparently believes that she does not have to

show substantial similarity to show that *E.T.* is a derivative work.

■ Litchfield cites no authority to support this novel proposition. The little available authority suggests that a work is not derivative unless it has been substantially copied from the prior work. *See Harry Fox Agency, Inc. v. Mills Music, Inc.,* 543 F.Supp. 844, 849 (S.D.N.Y.1982), *rev'd on other grounds,* 720 F.2d 733 (2d Cir.1983), *cert. granted sub nom. Mills Music, Inc. v. Snyder,* — U.S. —, 104 S.Ct. 1676, 80 L.Ed.2d 151 (1984); *Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (2d Cir.), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976); 1 M. Nimmer, *The Law of Copyright,* § 3.01 at 3–3 (1983 ed.).

We have stated that "[a] work will be considered a derivative work *only if it would be considered an infringing work if* the material which it has derived from a prior work had been taken without the consent of a copyright proprietor of such prior work." *United States v. Taxe,* 540 F.2d 961, 965 n. 2 (9th Cir.1976) (emphasis added).

To prove infringement, one must show substantial similarity. *See v. Durang,* 711 F.2d at 143, *Krofft,* 562 F.2d at 1172. Litchfield's arguments that section 106(2) radically altered the protection afforded by the law of copyright are frivolous.

## D. *Lanham Act Violation*

■ The district court dismissed Litchfield's allegations that defendants violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Rae v. Union Bank,* 725 F.2d 478, 479 (9th Cir.1984).

■ Section 43(a) makes a person liable for using a false description of origin in connection with any goods and services put into commerce. 15 U.S.C. § 1125(a). We have held that an actor may state a claim for "reverse passing off" under the Act

when a motion picture is mislabeled to mask his contribution. *Smith v. Montoro*, 648 F.2d 602, 605–07 (9th Cir.1981). Reverse passing off occurs when a "wrongdoer removes the name or trademark on another party's product and sells that product under a name chosen by the wrongdoer." *Id.* at 605.

Litchfield's claim is meritless, however, in light of our holding that there is no substantial similarity between *Lokey* and *E.T. See Warner Brothers v. American Broadcasting Companies*, 720 F.2d 231, 246 (2d Cir.1983). We have not yet decided whether the reverse passing off doctrine defined in *Smith* extends to cases of substantial similarity or is limited to bodily appropriation. *See Kamar International, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1064 (9th Cir.1981). In either case, without substantial similarity there can be no claim for reverse passing off under section 43(a). *Warner Brothers*, 720 F.2d at 246–47.

### F. *State Claims*

■ The district court dismissed plaintiff's state claims for unfair competition and misrepresentation. In so far as these state claims are restatements of the copyright infringement claims, they are preempted by federal copyright law. *Mention v. Gessell*, 714 F.2d 87, 90 (9th Cir.1983). Federal law preempts common law copyright claims undertaken after January 1, 1978. *Id.* Plaintiff did not allege or offer to prove that the copying took place before January 1978.

■ The dismissal of the pendent state claims of breach of implied-in-fact contract and breach of confidence was proper because all federal claims were dismissed prior to trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Jason v. Fonda*, 698 F.2d at 967.

### CONCLUSION

The summary judgment was proper because no reasonable jury could conclude that *Lokey* and *E.T.* were substantially similar in their ideas and expression. The

district court properly dismissed the other claims.

As is too often the case, Litchfield's action was premised "partly upon a wholly erroneous understanding of the extent of copyright protection; and partly upon that obsessive conviction, so common among authors and composers, that all similarities between their works and any others which appear later must inevitably be ascribed to plagiarism." *Dellar v. Samuel Goldwyn, Inc.*, 150 F.2d 612 (2d Cir.1945).

AFFIRMED.