**Fred L. WORTH, Plaintiff-Appellant,**

**v.**

**SELCHOW & RIGHTER COMPANY,**
**Horn Abbot, Ltd.,**
**Defendants-Appellees.**

**No. 86–5909.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1987.

Decided Sept. 8, 1987.

---

Joseph F. Hart, Beverly Hills, Cal., for plaintiff-appellant.

James P. Ryther, Chicago, Ill., for defendants-appellees.

Before NELSON, HALL and THOMPSON, Circuit Judges.

NELSON, Circuit Judge:

Fred L. Worth, the author of two encyclopedias on trivia, appeals the district court's grant of summary judgment, and denial of his concurrent motion for partial summary judgment, on a copyright infringement claim against the designers and marketers of the game *Trivial Pursuit.* We note jurisdiction under 28 U.S.C. § 1291 (1982) and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Fred L. Worth, a California resident, is the author and owner of all rights in two books on trivia entitled *The Complete Unabridged Super Trivia Encyclopedia* ("Super Trivia I"), and *The Complete Unabridged Super Trivia Encyclopedia, Volume II,* ("Super Trivia II"). Worth's books are compilations of facts, alphabetically arranged under headings that are followed by explanations of the particular entry. Each book contains 6,000 entries. Worth allegedly derived the information from books, films, and television shows after extensive research. The two volumes were first published in 1977 and 1981, respectively, and were registered in the copyright office in 1984. Worth's purpose for writing the books, as expressed in the introduction to his first book, was "one, to compile in one reference work a collection of interesting and trivial facts; and second, to collect interesting and perhaps not so trivial facts, facts that are difficult to find."

Worth alleges that Horn Abbot, Ltd., and its principals, the designers of the game *Trivial Pursuit,* and Selchow & Righter Company ("Selchow"), the marketer of the game, infringed the copyright in his books in their "Genus," "Baby Boomer," and "Silver Screen," editions of the game. *Trivial Pursuit* is a board game utilizing question and answer cards, in which the object of the game is to answer correctly "trivia questions" in various subject areas in order to roll the dice, advance around the board, and collect color-coded wedges. Each edition of the game contains 6000 questions and answers arranged on 1000 cards. The game tests the players' knowledge of facts in areas such as geography, art, literature, sports, and history (the subjects vary with each edition), and is designed to be entertaining.

Worth contends that 1,675 questions (27.9%) in the Genus edition were taken from *Super Trivia I,* 1,293 questions (21.6%) in the Silver Screen edition were taken from *Super Trivia I* and/or *II,* and 828 questions (13.8%) in the Baby Boomer edition were taken from *Super Trivia I* and/or *II.*[1] The following example is representative of the use of Worth's books:

*Worth's entry:*

Abel, Colonel Rudolf

Russian spy exchanged February 10, 1962 for F. Gary Powers, U–2 pilot.

---

1. Worth's calculations demonstrate the number of times the authors of the game's questions and answers allegedly used his books as a factual source. However, to the extent that Worth intends to indicate the quantitative relation of similar material in the works, the relevant inquiry is whether a substantial portion of the protectible material in the *plaintiff's* work was appropriated—not whether a substantial portion of *defendant's* work was derived from plaintiff's work. *See Atari, Inc. v. North Am. Philips Consumer Elec. Corp.,* 672 F.2d 607, 619 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982); 3 Nimmer, *Nimmer on Copyright* § 13.03[A], at 13–36 & n. 54 (1986). In any event, assuming that particular material is copyrightable, a determination of the qualitative importance of the material to the plaintiff's work is more significant than a quantitative calculation of the portion allegedly appropriated by the defendant. *See* 3 Nimmer, *supra,* § 13.03[A], at 13–37.

*Game Card*

Q. What Russian spy was exchanged for U–2 pilot Gary Powers in 1962?

A. Rudolf Abel.

The original creators of the game, Chris Haney and Scott Abbott, do not deny consulting Worth's books in the development of their board game. They merely state that Worth's books were among numerous reference sources they consulted in developing *Trivial Pursuit* (including other books, newspapers, television, radio, theater, and their own general knowledge).

The game was first conceived in 1979. John Haney participated in the early game development along with Chris Haney and Scott Abbott. In April, 1981, the three originators, together with Ed Werner, formed a Canadian corporation, Horn Abbot, Ltd., to market *Trivial Pursuit.* Abbot and Chris Haney assigned their rights to the corporation, and Horn Abbot, Ltd., obtained a Canadian copyright in the game. In November, 1982, Horn Abbot, Ltd., signed an agreement with Selchow to distribute *Trivial Pursuit* in the United States. By the end of 1984, sales volume for the game reached $256 million.

In October, 1984, Worth initiated a suit against Horn Abbot, Ltd., Selchow, Chris and John Haney, Scott Abbott, and Ed Werner, alleging copyright infringement and unfair competition and requesting $300 million in damages. The individual defendants (all Canadian residents) filed a motion to dismiss for lack of personal jurisdiction, which the district court granted on March 22, 1985.[2] The remaining parties filed cross-motions for summary judgment: The defendants moved for summary judgment on both the copyright infringement and unfair competition claims; Worth sought partial summary judgment only on the copyright infringement claim.[3] The court granted the defendants' motion and denied Worth's motion. Worth timely appealed.

## ISSUE PRESENTED

Whether the district court erred in granting summary judgment in favor of the defendants on the copyright infringement claim.

## DISCUSSION

### I. *Standard of Review*

 Summary judgments in copyright infringement actions are reviewed de novo. *Frybarger v. International Business Machines Corp.,* 812 F.2d 525, 528 (9th Cir. 1987). Although summary judgment is disfavored on the substantial similarity issue in copyright cases, *id.,* it is "clearly appropriate ... if, after viewing the evidence and drawing every inference in the light most favorable to the nonmoving party, the court concludes that no reasonable jury could find substantial similarity of both ideas and expression between the works at issue." *Id.* For examples of Ninth Circuit cases affirming summary judgment on the substantial similarity issue, see *id.* at 527; *Berkic v. Crichton,* 761 F.2d 1289, 1291 (9th Cir.), *cert. denied,* 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 69 (1985); *Litchfield v. Spielberg,* 736 F.2d 1352, 1354 (9th Cir. 1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985); *See v. Durang,* 711 F.2d 141, 142 (9th Cir.1983). The plaintiff bears the burden of proving substantial similarity. *Frybarger,* 812 F.2d at 528.

### II. *Analysis*

 To establish copyright infringement, the plaintiff must prove ownership of the work in question, access to the work by the defendant, and substantial similarity of both the general ideas *and* the expression of those ideas between the plaintiff's and defendant's work. *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1164 (9th Cir.1977);

---

**2.** Worth also appeals the district court's order granting the individual defendants' motion to dismiss for lack of personal jurisdiction. Because we affirm the district court's summary judgment in favor of the corporate defendants on the merits, we do not reach the question of personal jurisdiction over the individual defendants.

**3.** On appeal, Worth continues to confine his argument to the copyright infringement claim.

*see also Frybarger,* 812 F.2d at 529. For the purposes of the summary judgment motion, the defendants conceded Worth's copyright ownership and defendants' access to Worth's books. Our review, therefore, focuses on the issue of substantial similarity.

■ This circuit applies an "extrinsic test" to determine substantial similarity of ideas between two works. *Berkic,* 761 F.2d at 1292; *Krofft,* 562 F.2d at 1164. The test focuses on a comparison of the objective details of the works. *Litchfield,* 736 F.2d at 1356. Although the plaintiff is required to establish that the ideas in the works are substantially similar to prevail in a copyright infringement claim, the ideas alone are not copyrightable. 17 U.S.C. § 102(b) (1982) ("In no case does copyright protection for an original work of authorship extend to any idea, ... concept, ... or discovery...."); *Frybarger,* 812 F.2d at 529. Therefore, if the similarities between two works are confined to nonprotectible ideas, there is no infringing similarity. *Id.*

The district court found that even if the ideas are substantially similar in Worth's books and *Trivial Pursuit,* the expression in the game is not substantially similar to the protectible expression in the books. It therefore did not apply the extrinsic test and confined its analysis to the expression prong of the *Krofft* test. *See Landsberg v. Scrabble Crossword Game Players, Inc.,* 736 F.2d 485, 488 (9th Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984) ("Similarity of expression must be established because it is an axiom of copyright law that copyright protects only an author's expression of an idea and not the idea itself.").

To determine substantial similarity of expression, this circuit applies a subjective, "intrinsic" test. *Berkic,* 761 F.2d at 1292; *Krofft,* 562 F.2d at 1164. The test focuses on "whether 'an ordinary reasonable person' ... would find that the 'total concept and feel' of the works showed substantial similarity." *Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.,* 777 F.2d 485, 492 n. 9 (9th Cir.1985) (quoting *Krofft,* 562 F.2d at 1164 and *Litchfield,* 736 F.2d at 1357).

Worth asserts that because his books were used as a reference source for a certain percentage of the questions and answers in defendants' game cards, and because certain words were repeated, that the expression in the books and game cards is substantially similar.[4] He further contends that the game cards infringed his selection and arrangement of the facts, which is protected by the copyright in his compilation.[5] Although, selection and arrangement may constitute original authorship in compilations, 1 M. Nimmer, *Nimmer on Copyright* § 3.04, at 3–20, Worth's analysis of the expression prong of the substantial similarity test reveals a misapprehension of the scope of copyright protection.

Factual works receive distinct treatment from fictional works under copyright law. *Landsberg,* 736 F.2d at 488. Indeed, facts, like ideas, are never protected by copyright law. *Cooling Sys.,* 777 F.2d at 491; *see also* 17 U.S.C. § 102(b) (1982) (expressly excluding discoveries from the scope of copyright protection). Because authors who wish to express ideas in factual works are usually confined to a "narrow range of expression ..., similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed." *Landsberg,* 736 F.2d at 488. Fictional works, in contrast, which may be expressed with "infinite variations," enjoy a broader protection; a verbatim copy or close paraphrase is not a necessary element to establish infringement. *Id.* Worth cannot prevail in his claim without showing that the *Trivial Pursuit* game cards derived from his expression "something more than what

---

4. *See supra* note 1.

5. The Copyright Act of 1976 defines a "compilation" as

> a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.

17 U.S.C. § 101 (1982).

'must unavoidably be produced by anyone who wishes to use and restate' the facts that form the greater part of the work." *Cooling Sys.*, 777 F.2d at 492 (quoting *Landsberg*, 736 F.2d at 489).

■ It is clear, then, that the use of the factual content in Worth's books does not constitute infringement. "The discovery of a fact, regardless of the quantum of labor and expense, is simply not the work of an author." 1 M. Nimmer, *supra*, § 2.11[E], at 2–169. The verbatim repetition of certain words in order to use the nonprotectible facts is also noninfringing; the game cards' repetition of words used by Worth to describe places, persons, and events constitutes "mere *indispensable* expression" of particular facts or ideas. *See Frybarger*, 812 F.2d at 530 (emphasis in original). If we were to hold otherwise, we would, in effect, extend copyright protection to the facts contained in Worth's books. *See Landsberg*, 736 F.2d at 489 (noting that because of the unavoidable expression required to restate the nonprotectible ideas in plaintiff's work, a finding of infringing similarity of expression would effectively grant a copyright in the work's nonprotectible ideas).

The arrangement of Worth's book was not copied: His factual entries are arranged in alphabetical order; the *Trivial Pursuit* questions and answers are organized and color-coded by subject matter and are randomly arranged on each game card. As for the selection, although Worth's books were the source for many questions, the entire selection of facts in the books and game cards is not substantially similar. Factual works are not infringed in the absence of " 'bodily appropriat[ion]' " of expression. *Landsberg*, 736 F.2d at 489 (quoting *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 980 (2d Cir.), *cert. denied*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980)). Although Worth's books may have been a major reference source for the authors of *Trivial Pursuit*, there was no "bodily appropriation" of Worth's "selection" of 12,000 factual entries. According to Worth's own calculations, only a certain percentage of his factual entries were used as the basis for game card questions.[6]

Worth's reliance on cases involving infringement of one directory by another, *see, e.g., Leon v. Pacific Tel. & Tel. Co.*, 91 F.2d 484 (9th Cir.1937) (telephone directories), or one list by another, *see, e.g., Eckes v. Card Prices Update*, 736 F.2d 859 (2d Cir.1984), is not persuasive. In *Leon*, plaintiff's entire selection of names and numbers were copied and listed in numerical instead of alphabetical order. *Leon*, 91 F.2d at 484–85. In *Eckes*, the plaintiff published a list of 18,000 common baseball cards and selected 5,000 of those cards as "premium" cards; the defendant's listing selected substantially the same 5,000 cards as "premium" cards. *Eckes*, 736 F.2d at 860–61.

In addition, to the extent that *Leon* suggests that research or labor is protectible, later cases have rejected that theory. *See, e.g., Landsberg*, 736 F.2d at 489 (approving Second Circuit case holding that a movie studio's subsequent use of author's research and theory on the Hindenberg explosion was noninfringing absent wholesale appropriation of the work) (citing *Hoehling*, 618 F.2d 972); *Eckes*, 736 F.2d at 862 (noting that "sweat of a researcher's brow" does not merit copyright protection); *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1368–70 (5th Cir.1981) (holding that research involved in obtaining facts is not copyrightable and noting that the directory cases have been accorded special protection not applicable to other factual works) (cited following *Hoehling* discussion in *Landsberg*, 736 F.2d at 489); 1 M. Nimmer, *supra*, § 3.04, at 3–20 (according copyright protection to research "distorts basic copyright principles" by creating a "monopoly in public domain materials"). As the Second Circuit has observed:

6. Worth alleges that 3,796 questions and answers in *Trivial Pursuit* correspond to factual entries in his works. Therefore, 3,976 out of 12,000 factual entries contained in Worth's two books provided source material for the game cards. Clearly, Worth's complete "selection" of facts was not appropriated.

We ... cannot subscribe to the view that an author is absolutely precluded from saving time and effort by referring to and relying upon prior published material.... It is just such wasted effort that the proscription against the copyright of ideas and facts, and to a lesser extent the privilege of fair use, are designed to prevent.

*Rosemont Enters., Inc. v. Random House, Inc.,* 366 F.2d 303, 310 (2d Cir.1966), *cert. denied,* 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967) (citations omitted) (*quoted in Miller,* 650 F.2d at 1371); *see also Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 550 n. 3, 105 S.Ct. 2218, 2225 n. 3, 85 L.Ed.2d 588 (1985) (noting that " 'rigid application of the copyright statute' " may " 'stifle the very creativity which that law is designed to foster' ") (quoting *Iowa State Univ. Research Found., Inc. v. American Broadcasting Cos.,* 621 F.2d 57, 60 (2d Cir.1980)).

Finally, this circuit has noted that it is "entirely appropriate to view the individual similarities together and in context since ... substantial similarity in the expression of an idea may appear from the mood evoked by the work as a whole." *Durang,* 711 F.2d at 144. In addition, the *Litchfield* court noted that "[t]o constitute infringement of expression, the total concept and feel of the works must be substantially similar."[7] *Litchfield,* 736 F.2d at 1357; *see also Baxter v. MCA, Inc.,* 812 F.2d 421, 424 (9th Cir.1987); *Cooling Sys.,* 777 F.2d at 492 n. 9. Viewing the two works in context and for overall "mood" or "concept and feel," highlights the lack of substantial similarity in expression between Worth's trivia encyclopedias and the *Trivial Pursuit* game cards.

## CONCLUSION

The district court's grant of summary judgment on the copyright infringement claim in favor of the defendants and denial of cross-motion for partial summary judgment on that claim by the plaintiff is AFFIRMED.

---

7. In his treatise, Professor Nimmer commented on the proper application of the "total concept and feel" test. He observed that "[i]t should not be understood to mean that what would otherwise constitute an actionable similarity is rendered defensible because of a different 'concept and feel.' " 3 Nimmer, *supra,* § 13.03[A], at 13–30. In this case, we find no substantial similarity of protectible expression *or* of "concept and feel." We therefore are not confronted with the concern raised by Professor Nimmer.