**ILLINOIS BELL TELEPHONE COMPANY, an Illinois corporation, Plaintiff,**

v.

**HAINES AND COMPANY, INC., an Ohio corporation, Haines Criss + Cross Publishers, Inc., an Illinois corporation, William K. Haines, Sr., and William K. Haines, Jr. Defendants.**

**HAINES AND COMPANY, INC., Haines Criss + Cross Publishers, Inc., Counterclaimants,**

v.

**ILLINOIS BELL TELEPHONE COMPANY, an Illinois corporation, Ameritech Publishing, Inc., a Delaware corporation, Ameritech Publishing of Illinois Inc., an Illinois corporation, the Reuben H. Donnelley Corporation, a Delaware corporation, Am–Don, a general partnership formed under the Illinois Uniform Partnership Act, Defendants on Counterclaim.**

No. 85 C 07644.

United States District Court, N.D. Illinois, E.D.

April 13, 1988.

Ronald E. Cundiff, L. Bow Pritchett, Chicago, Ill., for plaintiff.

Jeremiah D. McAuliffe, Craig S. Fochler, Edward G. Wierzbicki, Thomas P. Arden, Byron L. Gregory, Ronald E. Cundiff, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiff Illinois Bell Telephone Company ("IBT") brought this action for copyright infringement under Title 17 of the United States Code against defendants Haines and Company, Inc., Haines Criss + Cross Publishers, Inc., William K. Haines, Sr., and William K. Haines, Jr. (collectively "Haines"). Now before the court is Haines' motion to dismiss or, alternatively, for partial summary judgment. IBT brings a cross-motion for partial summary judgment. For the following reasons, IBT's motion for summary judgment is granted on the issue of liability.

### Factual Background

*The Parties and Their Directories*

IBT is a public utility that provides telephone service. The Illinois Administrative Code requires IBT to publish and distribute telephone directories to its consumers. 83 Ill.Admin.Code § 735.180; Deposition of David Winton, IBT District Manager–Directory ("Winton Dep."), p. 201. The content of these directories, commonly known as "white pages," primarily is comprised of alphabetical listings of IBT's customers, followed by their respective addresses and telephone numbers. Other features of the directories are not at issue here.

The source for each listing is the IBT customer. When a customer initially receives telephone service, the customer's preference as to a listed name is placed on a service order and a telephone number is assigned. Winton Dep., p. 204. The contents of the service order are entered into IBT's computer system, where editing and verification take place in a number of different steps. Winton Dep., pp. 99–100, 204–210. Some manual correction and proofreading occurs. Winton Dep., pp. 198, 205, 221, 234–235.

Haines publishes cross reference directories under the trademark Criss + Cross. Declaration of James A. McGeorge, Vice President of Haines and Company, Inc., at ¶ 2 ("McGeorge Decl."). Each directory contains an "Addressakey," or street address directory, and a "Telokey," or telephone numerical directory. *See* Arden Exhibit 1. The Addressakey lists all streets in an area in alphabetical order. Each street and its town are capitalized in a bold typeface and are followed by the zip code. Beneath each street listing, addresses are listed in ascending numerical order. Adjacent to the address is the resident's last name, then first name and/or initials. *See* Arden Exhibit 1, Addressakey Key to Symbols. Non-residential names and numbers appear in bold typeface. Many listings are followed by a number to indicate the year in which the listing first appeared or was changed. The Addressakey also indicates whether an address is a multiple residence or apartment and whether more than one person is at an address or uses a telephone number. Following the list of addresses for each street, the Addressakey indicates the number of businesses, residences and new listings that appeared for that street.

The Telokey for a given area lists telephone numbers in ascending numerical order according to headings containing the telephone number prefix. *See* Arden Exhibit 1. Adjacent to each number is the name and address, with non-residential listings in boldface type. A plus-sign appears by new listings, and apartments or mobile homes are indicated.

Other than the changes in format, additional differences exist between the Haines and IBT listings. Haines employs certain standardized abbreviations which differ from IBT's equivalent abbreviations. First, Haines follows United States Post Office rather than IBT abbreviations for street designations such as "avenue," "street," "boulevard," etc. McGeorge Dep. at 108, 111, 130; McGeorge Decl., ¶ 18. Second, Haines divides the IBT listings into the categories of residential or non-residential. This determination is made pursuant to the subjective judgment of the Haines staff, based upon training provided by Haines. McGeorge Dep. at 37–38. For example, Haines would designate an address at a downtown office building as a business listing. *Id.* Third, some of the IBT listings are duplicates, appearing in both the IBT city and suburban directories. Haines uses only one such listing and does not repeat the duplication. *Id.* at 115–116. Fourth, every Haines directory approximately encompasses the listings contained in one to five of the IBT directories because of differences in the geographic compilation of the respective directories. *Id;* McGeorge Decl., ¶ 33. Fifth, unlike the IBT directories, the Haines directories include over 300,000 listings of addresses without names and/or telephone numbers. McGeorge Dep. at 97–98; McGeorge Decl., ¶ 28.

Although the Haines directories contain tables of demographic information, they are not relevant for purposes of this motion because IBT does not identify them as infringing upon IBT's copyrights.

*Haines' Use of IBT's Directories*

Haines began publishing Chicago-area directories in 1969. However, IBT objected to Haines' use of information from IBT's directories. Declaration of William K. Haines, Sr., ¶ 5 ("Haines Decl."). Therefore, from 1971 through 1980, the parties entered an agreement, renewed each year, for IBT's provision to Haines of pre-publication advance listings in IBT's Chicago-area directories at a certain cost per listing. Haines Decl., ¶¶ 5, 6; Exhibit 1, "License Agreement."

Under the agreement, IBT provided Haines with "signature copies" of its directories received from the printer prior to public distribution. Haines Decl., Exhibit 1, ¶ 3. Haines personnel compared the IBT listings contained in the signature copies with Haines' listings. Deposition of James A. McGeorge ("McGeorge Dep."), p. 24. Through this process, Haines identified listings that IBT had added, altered or deleted since its last annual directories. *Id.* at 25. The Haines staff underlined in red on the signature copies all IBT listings that differed from Haines' prior listings, including the additional listings. *Id.* at 29–31. Next, the Haines data entry department logged the red-lined IBT listings into the Haines data system. *Id.* at 34–35. Haines' proofreaders then compared the data entries to the red-lined listings, checking for inaccuracies. *Id.* at 39.

Each year in which the parties renewed their agreement, IBT billed Haines for every listing contained in IBT's signature copies and not merely for new or changed listings. McGeorge Dep. at 86; Declaration of Roger McDowall, IBT Directory Manager, ¶¶ 4, 5 ("McDowall Decl."). Haines chose not to renew the agreement after 1980. However, Haines utilized IBT's listings in the same manner both during and after termination of the agreement. McGeorge Dep., pp. 62–63. During the course of the agreement, Haines obtained IBT's listings from the signature copies; subsequently, Haines made its comparisons against IBT's published directories. *Id.* at 54, 62–64.

*IBT's Claims*

IBT alleges that ten editions of the Haines directories published in 1983 and 1984 infringe the copyrights of 34 IBT directories. (The pertinent directories of

each party cover listings for the greater Chicago metropolitan area.) Specifically, IBT claims that:

In preparing and publishing the Haines directories, defendants infringed by copying from the Illinois Bell directories the individual listings contained therein.

Complaint, ¶ 12. Further, IBT alleges that numerous fictitious listings which IBT placed in its own directories are replicated in the Haines directories. Complaint, ¶ 11; Exhibit "C." A list of the registration number of the certificates of registration issued by the Registrar of Copyrights for each relevant IBT directory, and the effective dates of registration, is appended to the complaint as Exhibit A. The certificates of registration comprise Exhibit B. IBT requests both injunctive and monetary relief.

## Motion to Dismiss

Haines initially brings a motion to dismiss, arguing that IBT has not stated a cause of action for copyright infringement because it failed to allege substantial similarity between the infringing directories and IBT's copyrighted directories. Also, Haines contends that IBT failed to allege copying of protectible facts in its copyrighted directories.

■ The court notes that to defeat a motion to dismiss, a complaint "must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Carl Sandburg Village Condominium Ass'n. No. 1 v. First Condominium Development Co.,* 758 F.2d 203, 207 (7th Cir.1985). To establish copyright infringement, a plaintiff must prove ownership of a valid copyright and that the defendant copied plaintiff's work. *Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 614 (7th Cir.1982), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145.

### Ownership Element

■ The court initially will address Haines' argument concerning the first element, ownership of a valid copyright. Haines contests the sufficiency of IBT's allegations by contending that IBT claims infringement of unprotectible facts. Haines does not, however, claim that IBT lacks copyrights in its directories. In fact, IBT attached to its complaint copies of the certificates of registration for each of the pertinent directories. Complaint, Exhibit B. This evidence accords IBT a prima facie presumption of copyright validity and ownership. *Rural Telephone Service Co. v. Feist Publications, Inc.,* 663 F.Supp. 214, 217 (D.Kan.1987). Moreover, the "white pages" of telephone books are copyrightable compilations under 17 U.S.C. §§ 102 and 103. *Rural Telephone, supra,* at 218 (cites omitted); *see also Farmers Independent Telephone Co. v. Thorman,* 648 F.Supp. 457, 459 (W.D.Wis.1986). Accordingly, IBT has shown that its directories have valid copyrights.

Nonetheless, Haines contends that IBT's copyrights extend only to the "arrangement" of the information in the directories, as opposed to individual facts comprising the listings. 17 U.S.C. § 103(b) provides that the copyright in a compilation "extends only to the material contributed by the author of such work, as distinguished from any preexisting material employed in such work." In its complaint, IBT states that Haines "infringed by copying from the Illinois Bell directories the *individual listings* contained therein." Complaint at ¶ 12 (emphasis added). The composition of an individual listing is readily apparent by reference to Exhibit "C" of the complaint, which compares individual listings of the IBT and Haines directories.[1] An IBT listing is comprised of an individual's last name, followed by the full, abbreviated, or initialed first name and/or a middle initial, followed by the street address which may or may not be in abbreviated form, and the seven-digit telephone number. Some listed names are capitalized, but that is irrelevant for purposes of this motion.

■ In this circuit, IBT's listings are protectible, copyrighted material. *Schroe-*

---

**1.** The fact that some of these listings are fiction-   al does not bear on this analysis.

der v. William Morrow & Co., 566 F.2d 3 (7th Cir.1977) (defendants infringed the plaintiff's copyright even though they copied only the names and addresses, but not the other information, in plaintiff's compilation). The court reached this conclusion despite finding that the individual names and addresses were in the public domain and not copyrightable, explaining:

> Another is entitled to make his own compilation of the same names and addresses, using information in the public domain, but he is not entitled merely to copy the copyrighted list. *G.R. Leonard & Co. v. Stack*, 386 F.2d 38, 39 (7th Cir.1967).

*Schroeder, supra*, 566 F.2d at 5–6.

The Seventh Circuit reaffirmed the *Schroeder* result in *Rockford Map Publishers, Inc. v. Directory Service Co. of Colorado, Inc.*, 768 F.2d 145 (1985), *cert. denied*, 474 U.S. 1061, 106 S.Ct. 806, 88 L.Ed.2d 781. The *Rockford Map* court found that the defendant map publisher impermissibly avoided the task of searching for property deed descriptions on file in the local recorder's office. Skipping that step, the defendant took its boundary information from plaintiff's copyrighted topographical plat maps. The court held that the defendant committed an infringement by obtaining those facts from the plaintiff's maps, even though the defendant had edited and changed the material to create a different map. *Id.* at 149–150.

Haines attempts to impose a different interpretation upon the Seventh Circuit's holdings by contending that a case integral to the court's reasoning in these cases has been reversed. That case, *Leon v. Pacific Telephone & Telegraph Co.*, 91 F.2d 484 (9th Cir.1937), served as authority for the *Schroeder* court in finding that a compilation of names and addresses in the public domain is copyrightable. *Schroeder, supra*, 566 F.2d at 5. In *Leon*, the court upheld a finding of copyright infringement in favor of a publisher of an alphabetical telephone directory, where the defendant had rearranged in numerical form the information in the plaintiff's directory. *Leon* relied in part upon the "industrious collec-

tion" theory that compels a finding of infringement when a compiler of facts takes that information from a plaintiff's copyrighted compilation, thus avoiding the expenditure of effort undertaken by plaintiff to obtain those facts originally. The Ninth Circuit later rejected the *Leon* court's reasoning "to the extent that *Leon* suggests that research or labor is protectible...." *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 573 (1987). *Leon* was not overturned; rather, it is still good law, at least to the extent that telephone directories are copyrightable.

*Worth* does not dictate a reassessment of *Rockford Map*. While the *Rockford Map* court rejected the theory that a finding of infringement of a copyrighted compilation may be predicated upon the amount of time or expense undertaken by a plaintiff to gather the information, the court followed *Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 F. 932 (S.D.N.Y.1921), *aff'd*, 281 F. 83 (2d Cir.), *cert. denied*, 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074 (1922) (a second compiler must independently assemble his information and only then may use the original compilation to check for error). *Rockford Map*, 768 F.2d at 149, *citing Jewelers' Circular*, 274 F. at 935. In reaching this conclusion, the Seventh Circuit had access to the same authority that the Ninth Circuit used in *Worth* to reject the suggestion that research alone is protectible under the copyright laws: *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485 (9th Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984); *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972 (2d Cir.), *cert. denied*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980); *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365 (5th Cir.1981); *Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303 (2d Cir.1966), *cert. denied*, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967).

In *Rand McNally & Co. v. Fleet Management Systems, Inc.*, 634 F.Supp. 604, 608 (N.D.Ill.1986), it was observed that the *Rockford Map* court:

> .... did not repudiate (the Seventh Circuit's) earlier authority for copyright pro-

tection of factual compilations, and gave no express indications that it intended henceforth to follow the more restrictive authority of the second or fifth circuits. Accordingly, IBT's allegation concerning infringement of its individual listings does not fail for want of alleging protectible facts. Except for secondary checking of error, *Rockford Map* protects a plaintiff compiler's copyright for even those facts that the plaintiff gathered from the public domain. IBT has sufficiently alleged a valid copyright in its listings.

*Copying Element*

█ Haines asserts that IBT failed to allege a substantial similarity between the copyrighted and infringing works. However, the copying element may be satisfied by direct evidence of copying. *Atari, supra,* 672 F.2d at 614; *accord Southern Bell Telephone & Telegraph Co. v. Associated Directory Publishers,* 756 F.2d 801, 810 (11th Cir.1985). As to substantial similarity, the *Atari* court noted that:

> Because direct evidence of copying often is unavailable, copying may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work.

*Atari, supra,* 672 F.2d at 614. The plain meaning of *Atari* is that the "substantial similarity" inquiry is employed only when there is no direct evidence of copying. *Rural Telephone Service Co. v. Feist Publications, Inc.,* 663 F.Supp. 214, 218 (D.Kan. 1987). Copying may be evidenced by the duplication of errors. *Id.* (citations omitted). Because IBT alleges that Haines copies by replicating IBT's fictitious listings (Complaint at ¶ 11; Exhibit C), IBT has sufficiently shown the second element of infringement for purposes of this motion. As a result, Haines' motion to dismiss the complaint for failure to state a cause of action is denied.

Cross–Motions for Partial
Summary Judgment

Summary judgment should be granted pursuant to Rule 56 of the Federal Rules of Civil Procedure where the evidence is so one-sided that no genuine issue of material fact exists; one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2516, 91 L.Ed.2d 202 (1986). Moreover, the substantive law identifies facts that are material. Irrelevant facts will not be counted for purposes of the motion. *Id.* 106 S.Ct. at 2510. The court must determine whether there is sufficient evidence to support a directed verdict for IBT. *Id.* at 2511–2512.

As discussed above, IBT has a valid copyright in its telephone directories. Duplication of errors provides significant evidence of copying. *Rural Telephone, supra,* 663 F.Supp. at 218. IBT alleged that it used a number of fictitious listings that Haines duplicated in its own directories. Complaint at ¶ 11; Exhibit C. IBT also submitted an affidavit demonstrating that 10 of the 12 fictitious listings appearing in the 1982 IBT directory for Chicago also appeared in the comparable 1983 Haines directory. Further, 13 of the 14 fictitious listings in the 1983 IBT Chicago directory appeared in the 1984 Haines Chicago directory. McDowall Decl., ¶ 8. Nonetheless, this uncontroverted evidence, standing alone, does not compel a finding in favor of IBT.

Direct evidence of copying exists here: Haines admits copying occurred. As described above, the Haines staff annually identified new, deleted and altered names, addresses and telephone numbers by making a direct comparison of the IBT signature copies with Haines' listings. McGeorge Dep., pp. 23–24, 140. The Haines data entry staff then entered this IBT information into the Haines system.[2]

█ Yet, Haines asserts that it does not copy IBT's listings because Haines alters the listings, not only by changing the order

---

2. The parties do not identify the exact nature of the system, although Haines indicates it may have used either a keypunch or computer system, depending upon the year at issue. McGeorge Dep., p. 39. The nature of the system is not relevant here.

in which name, address and telephone number are presented, but also by delineating non-residential listings in bold type, adding other data, editing when verification identifies errors, and merging the IBT directories into fewer directories. Haines additionally distinguishes its directories by noting that they perform different functions. IBT concedes that a consumer looking up a telephone number could not easily locate it in a non-alphabetical Haines directory. Winton Dep., p. 172. However, in this circuit, a claim of copyright infringement involving a compilation does not require identical copying. *Schroeder, supra,* 566 F.2d at 6; *see also Rural Telephone, supra,* 663 F.Supp. at 219 (defendant infringed even though he later verified the material); *United Telephone, supra,* 671 F.Supp. at 1522. Therefore, the court holds that Haines copied from IBT's directories.

■■■ In order to prevail on a copyright claim, it is not enough to say that the defendant copied. The copying also must be infringing, in that it was done to an unfair extent. *G.R. Leonard & Co. v. Stack,* 386 F.2d 38, 39–40 (7th Cir.1967). On this issue, a defendant may assert the common law fair use defense. *United Telephone Co. of Missouri v. Johnson Publishing Co., Inc.,* 671 F.Supp. 1514, 1522–1523 (W.D.Miss.1987), *appeal docketed,* No. 87–2481, *consol. with* No. 87–2571 (8th Cir.1987). When a defendant fails to start with his own independent canvass and instead starts with plaintiff's copyrighted information, however, this defense is unavailable. *G.R. Leonard, supra,* 386 F.2d at 39; *accord Rural Telephone, supra,* 663 F.Supp. at 219; *United Telephone, supra,* 671 F.Supp. at 1523. Haines' own admissions thus preclude its resort to this defense. Haines cannot establish that its own directories are the primary source for the listings because only by comparison with prior directories does it ascertain that an IBT listing is new, deleted or changed.

Haines offers an additional argument to support its contention that use of IBT's listings is not infringing. Haines claims that its only alternative to taking IBT's data is to expend time and resources to repeat IBT's efforts in obtaining the listings, and that basic copyright principles would not require this. Haines relies upon *Rosemont Enterprises, Inc. v. Random House, Inc.,* 366 F.2d 303 (2d Cir.1966), *cert. denied,* 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967), where the court stated:

> We ... cannot subscribe to the view that an author is absolutely precluded from saving time and effort by referring to and relying upon prior published material.... It is just such wasted effort that the proscription against the copyright of ideas and facts, and to a lesser extent the privilege of fair use, are designed to prevent.

*Rosemont* at 310; *accord Worth, supra,* 827 F.2d at 574 (9th Cir.1987). However, as discussed above with respect to the motion to dismiss, the Seventh Circuit firmly holds that a compiler commits copyright infringement if he copies the original compiler's information without conducting an independent canvass. Therefore, Haines' arguments against a finding of infringement are unavailing.

## CONCLUSION

IBT has alleged the elements necessary to support its copyright infringement claim. The court therefore denies Haines' motion to dismiss. Drawing all inferences in its favor, Haines has not shown the existence of any genuine issue of material fact. The uncontroverted record establishes IBT's infringement claim as a matter of law. The court therefore denies Haines' motion for partial summary judgment and grants IBT's motion for partial summary judgment on the issue of liability.