CHESS MUSIC, INC., Cherry Lane Music Co., American Broadcasting Music, Inc. and Blendingwell Music, Inc., Gladys Music, Inc., Plaintiffs,

v.

Willard F. SIPE, Defendant.

WB MUSIC CORP., Gnossos Music, Sweet City Records, Inc., and Sailor Music, Plaintiffs,

v.

Willard SIPE, Defendant.

Nos. 4–77 Civ. 12 and 4–77 Civ. 240.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 29, 1977.

Loring M. Staples and Brian B. O'Neill, Faegre & Benson, Minneapolis, Minn., for plaintiffs.

Harvey E. Skaar, Skaar & McCullough, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION

LARSON, District Judge.

These are actions for infringement of copyright, 17 U.S.C. §§ 1(e), 101(a), (b) (1970), in which plaintiffs seek injunctions and damages for the unauthorized public performance for profit of copyrighted musical compositions.[1] The two actions were consolidated for trial.

The defendant Willard Sipe is the owner and operator of the Rockford House in

1. The compositions in the first action are "Daydreams About Night Things" of which the copyright owner is Chess Music, Inc.; "My Sweet Lady" owned by Cherry Lane Music Company; "Bad Bad LeRoy Brown" owned by American Broadcasting Music, Inc., and Blendingwell Music, Inc.; and "Can't Help Falling in Love" owned by Gladys Music, Inc. The compositions at issue in the second action are "New Kid in Town" owned by WB Music Corp.; "Danny's Song" owned by Gnossos Music; "Play That Funky Music" owned by Sweet City Records, Inc.; and "Rock 'n Me" owned by Sailor Music.

Rockford, Minnesota, which includes a public restaurant and bar where food and beverage are served. On Wednesdays, Fridays, and Saturdays, live music is presented for the patrons. There is no cover charge for the music.

The allegations in the complaint arise from two specific performances at Rockford House, the first July 28, 1976, when a band Nite Crew played "Daydreams about Night Things," "My Sweet Lady," "Bad Bad LeRoy Brown," and "Can't Help Falling in Love." On the second evening, May 7, 1977, a band Black Jack played "New Kid in Town," "Danny's Song," "Play That Funky Music," and "Rock 'n Me." The plaintiffs were and are the proprietors of valid copyrights for these works. The defendant Willard Sipe had no license from the plaintiffs or their agent, the American Society of Composers, Artists and Publishers, to permit these compositions to be played.

Willard Sipe testified that when he hired the musicians in question, he specifically and personally instructed them not to play copyrighted music. He also testified that he had no knowledge as to what songs were played on the evenings in question, with the exception of "Bad Bad LeRoy Brown," and had no knowledge as to whether any of the songs played were copyrighted.

Members of the two bands testified that the bands learned the songs from the radio and from records, they never used sheet music, and they were unaware that the songs were copyrighted.

There is no doubt that the performances in question were performed publicly for profit and without the permission of the copyright owners. Defendants urged, however, as defenses that the bands were instructed not to play copyrighted music; that Willard Sipe was without knowledge as to the music played; and that Sipe and the band members were without knowledge as to the existence of applicable copyrights.

■ The purpose of the Copyright Act is to protect the interests that composers and authors have in their artistic products, *Washingtonian Co. v. Pearson*, 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 470 (1939), by granting legal monopolies to them in the publication and performance of copyrighted works, *Herbert v. Shanley Co.*, 242 U.S. 591, 37 S.Ct. 232, 61 L.Ed. 511 (1917).

■ In an age where much of the music is copyrighted, Sipe should not profit at the expense of these song composers by instructing musical groups not to play copyrighted music and by claiming ignorance as to their program. He is deemed to have acquiesced in the musicians' performance as he allowed the musicians the discretion to select the program. See *Famous Music Corp. v. Bay State Harness Horse Ranching and Breeding Association*, 423 F.Supp. 341 (D.Mass.1976). In any case, in a copyright infringement action, the crux of liability is benefit received, *Herbert v. Shanley Co., supra*, and Willard Sipe obviously believed he would profit by the presence and music of the Nite Crew and Black Jack.

■ Likewise, a defense on behalf of Sipe, and the two bands, that they lacked the knowledge the music was copyrighted is unavailing. See *Buck v. Jewell*, 283 U.S. 191, 51 S.Ct. 410, 75 L.Ed. 971 (1931). To allow this defense would defeat totally the purpose of the Copyright Act: All proprietors, and musicians, would soon lack knowledge of the origin of all musical works. There is a presumption that property has an owner; the defendant is obligated not to use copyrighted songs without that owner's permission. And again, Sipe, and the bands, profited from the music of these plaintiffs.

■ The defendant has a choice as to whether he will have live music or do without, and has chosen to profit thereby. Those who profit from copyrighted music are obliged to pay not only the piper but the author.

Accordingly, I must and do find that the performances at the Rockford House were violations of the Copyright Act.