**BROADCAST MUSIC, INC., Plaintiff,**

v.

**NIRO'S PALACE, INC., Defendant.**

**No. 83 C 7362.**

United States District Court,
N.D. Illinois, E.D.

May 28, 1985.

Lee Ann Watson, Patrick J. Lamb, Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for plaintiff.

Dennis Pence, Schumacher, Jones, Kelly, Olson & Pusch, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Broadcast Music, Inc. ("BMI") brought this action against Niro's Palace, Inc. ("Niro's"), seeking injunctive relief, statutory damages, and attorney's fees for Niro's alleged infringement of certain musical composition copyrights. Jurisdiction

is based on 28 U.S.C. § 1338(a) and is not contested. Presently before the court are the parties' cross-motions for summary judgment. For the reasons set forth below, BMI's motion is granted in part and denied in part, and Niro's motion is denied.

### Factual Background

The following facts are not in dispute. BMI purports to be the world's largest "performing rights organization" that licenses nondramatical musical works on behalf of copyright owners under 17 U.S.C. § 110 *et seq.* Under this arrangement, BMI pays a fee to the copyright owner, charges a fee for nonexclusive licenses to perform copyrighted musical compositions, and enforces infringements of BMI held copyrights.

Niro's owns and operates the Palace Bowl, a bowling alley and tavern. It serves food and drink to the public, and provides live entertainment including performances of musical compositions. In early December 1982, BMI learned that live music was being performed on Niro's premises despite the fact that Niro's did not have a licensing agreement with BMI. On December 10, 1982, BMI sent a letter to Niro's informing it that copyrighted music could not be performed on its premises without prior consent of the copyright owner or a BMI license. Enclosed with the letter was a BMI "blanket" license agreement.

Sometime in late December 1982 or early January 1983, a BMI representative telephoned Niro's and advised Jack Nickol ("Nickol"), a principal of Niro's, that Niro's was violating the Copyright Act of 1976 by allowing copyrighted songs to be performed on Niro's premises without first obtaining a BMI license. Niro's nonetheless refused to enter into a licensing agreement. Subsequently, BMI sent a letter to Niro's again informing it that it had to obtain a BMI license in order to have copyrighted songs played on its premises. Niro's did not respond to this letter. In late January 1983, BMI sent a "mailgram" to Niro's demanding that it stop the play-

ing of BMI music on its premises. Niro's rebuffed all of these warnings to stop infringing copyrights held by BMI.

BMI alleges that on March 18, 1983, a BMI investigator and his wife observed the live performance of thirty-two musical works on Niro's premises. Of these thirty-two musical works, BMI alleges that fourteen involve copyrights held by BMI. Subsequently, BMI contacted Niro's on two occasions, again warning Niro's that performance of copyrighted music without consent or a license constituted copyright infringement. No license agreement was ever executed.

### Discussion

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> [summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Niro's attempts to raise several factual issues so as to stave off summary judgment. As discussed below, its attempts are entirely lacking in merit. (On the other hand, Niro's contends that one or more of its affirmative defenses has been established as a matter of law, and that it is therefore entitled to summary judgment.)

### I. *Copyright Infringement*

██ In order for BMI to establish copyright infringement, it must prove (1) ownership of a valid copyright, and (2) "copying" by defendant. *E.g., Atari, Inc. v. North American Philips Consumer Electronics Corporation,* 672 F.2d 607, 614 (7th Cir.1982); 3 M. Nimmer, *Nimmer On Copyright* § 13.01, at 13–3 (2d ed. 1984). The first element has been established by the filing of BMI's registration certificates and the affidavit of Theodore Zavin ("Zavin Aff."), which constitute a *"prima facie* showing of proprietorship."

*Broadcast Music, Inc. v. Moor-Law, Inc.,*
484 F.Supp. 357, 362–63 (D.Del.1980).

█ With respect to the second element, "copying," Niro's makes a tortured attempt to raise a material issue of fact. Copying can take many forms. The most straightforward type of copying is the public performance of another's musical composition. *Twentieth Century Music Corporation v. Aiken,* 422 U.S. 151, 157, 95 S.Ct. 2040, 2044, 45 L.Ed.2d 84 (1975). Moreover, not only is the peformer liable for infringement, but so is anyone who sponsors the performance. As the Supreme Court found in *Aiken:*

> An orchestra or individual instrumentalist or singer who performs a copyrighted musical composition in ... a public place without a license is ... clearly an infringer under the statute [the Copyright Act of 1909]. *The entrepreneur who sponsors such a public performance for profit is also an infringer—direct or contributory.*

422 U.S. at 157, 95 S.Ct. at 2044 (emphasis added).

█ In this case, BMI's affidavits establish that 14 copyrighted songs were performed on Niro's premises on the evening of March 18, 1983. (Affidavit of Daniel Wagemann, ¶ 6; Affidavit of Audrey Wagemann, ¶ 5.) In an attempt to challenge these affidavits, Niro's has submitted the affidavits of a band member and of a bartender on duty on the night in question. Niro's argues that the affidavit of the bartender raises a material issue of fact because he disputes the kind of food and drink that the BMI investigator and his wife claimed they were served. (Affidavit of Michael Murphy, ¶¶ 4–5.) Such wholly irrelevant details, however, do not effectively controvert BMI's affidavits.

█ In addition, Niro's argues that the affidavit of the band member raises a material issue of fact as to the songs played on March 18, 1983. (Affidavit of Gregory Kerkera, ¶¶ 2–9.) However, Kerkera's affidavit merely reveals that he cannot remember what musical compositions were pe-

formed. (*Id.,* ¶¶ 4–5.) Such evidence does not establish that a material factual dispute exists in this case. However, as to two of the musical compositions, "Yesterday" and "Tutti Frutti," the Kerkera affidavit does controvert the BMI affidavits because it states that "Yesterday" has never been performed by the band, and that "Tutti Frutti" was added to the repertoire of the band only after the night in question. (*Id.,* ¶¶ 7–8.)

Therefore, as to the playing of twelve of the fourteen musical compositions in question, no material factual dispute exists. Accordingly, performance of these twelve songs on Niro's premises constituted copyright infringement, unless Niro's can establish a valid affirmative defense to that charge.

## II. *Niro's Affirmative Defenses*

Niro's has attempted to establish four affirmative defenses, all of which are lacking in either legal or factual support. Mere asertion of an affirmative defense, without a factual predicate for it, is insufficient to defeat a motion for summary judgment. *See* Fed.R.Civ.P.Rule 56(e); *Tilden Financial Corporation v. Palo Tire Service,* 596 F.2d 604, 607–608 (3d Cir.1979).

### A. *"Per Piece" Licensing*

Under a "per piece" license agreement, a licensee pays for the right to perform specific musical compositions. The per piece license is the product of a consent decree entered into by BMI and the United States in 1966 in an antitrust suit, *United States v. Broadcast Music, Inc.,* 1966 Trade Cases (CCH) ¶ 71,941 (S.D.N.Y.1966). The conditions under which BMI is required to offer a per piece license are set forth in the consent decree as follows:

> Defendant [BMI] shall not, in connection with any offer to license by it the public performance of musical compositions by music users other than broadcasters, refuse to offer a license at a price or prices to be fixed by defendant with the consent of the copyright proprietor for the performance of such specific (i.e., per piece)

musical compositions, the use of which shall be requested by the prospective licensee.

1966 Trade Cases (CCH) at ¶¶ 83,326–83,327.

■ Niro's argues that BMI's alleged refusal to offer a per piece license establishes abuse of copyright in this case. This argument, however, is totally lacking in legal support. The last clause of the quoted section of the consent decree plainly states that the use of a per piece license "shall be requested by the prospective licensee." Since Niro's has neither alleged in its pleadings nor averred in its affidavits that it ever requested a per piece license, it cannot complain that BMI never offered one.

#### B. *List of Protected Songs*

■ Niro's next argues that BMI should be barred from maintaining this copyright infringement action because BMI refused to provide Niro's with a list of all of the songs assigned to BMI. However, Niro's has not cited a single case where a court has held that BMI has a duty to provide such a list. Rather, the law is directly to the contrary. In *Leigh v. Sakkaris*, 215 U.S.P.Q. (BNA) 113 (N.D.Cal.1982), for example, the defendant, a tavern owner, also argued that the plaintiff-in-interest, the American Society of Composers, Authors and Publishers ("ASCAP"), was barred from maintaining a copyright infringement action because of its refusal to provide a list of copyrighted songs. The court rejected that argument, stating as follows:

As to the failure of the ASCAP to provide a list of musical works covered by its licensing agreement, courts have stated that in an era when much of the music performed is copyrighted, a proprietor should not profit at the expense of song composers by instructing musical groups not to play copyrighted music and by then claiming ignorance of their program. *See Chess Music, Inc. v. Sipe*, 442 F.Supp. 1184, 199 U.S.P.Q. 767

(D.Minn.1977). As the only purpose of a list would be to instruct musicians not to play those pieces listed, production of a list is not a defense to copyright violations.

215 U.S.P.Q. (BNA) at 115. *Accord Warner Brothers, Inc. v. O'Keefe*, 468 F.Supp. 16, 20 (S.D.Iowa 1977). *See also Famous Music Corporation v. Bay State Harness Horse Racing and Breeding Association, Inc.*, 554 F.2d 1213, 1215 (1st Cir.1977). Thus, BMI clearly did not have a duty to provide Niro's with a list of copyrighted songs. Accordingly, Niro's affirmative defense is, as a matter of law, insufficient to bar BMI's claims for copyright infringement.

#### C. *Editing Service*

■ Niro's next argues that BMI is equitably estopped from asserting infringement on the theory discussed in *Tempo Music, Inc. v. Myers*, 407 F.2d 503, 507 (4th Cir. 1969). In *Tempo Music*, the court held that the plaintiffs were "estopped to assert [the] infringement and ask for damages and counsel fees" because an ASCAP representative, as agent for the plaintiffs, failed to advise the defendant of the availability of an editing service, as required by ASCAP's consent decree. *See United States v. American Society of Composers, Authors and Publishers*, Civil Action No. 13–95 (S.D.N.Y. Mar. 14, 1950).[*]

Niro's reliance on *Tempo Music* is misplaced. In that case, the source of the duty to disclose the availability of an editing service was ASCAP's consent decree, to which BMI was not a party. BMI's consent decree created no such duty, and Niro's has not suggested any other source for such a duty. Therefore, Niro's third affirmative defense is, as a matter of law, insufficient to bar BMI's claims for copyright infringement.

#### D. *Copyright Misuse*

Niro's alleges copyright misuse as a fourth affirmative defense. In support of this defense, Niro's relies heavily on the decision in *Broadcast Music, Inc. v. Moor-*

---

[*] Under this consent decree, ASCAP is required, upon written request from a prospective licen-

see, to inform the prospective licensee whether specific songs are in the ASCAP repertoire.

*Law, Inc.,* 484 F.Supp. 357 (D.Del.1980). In *Moor-Law,* BMI sued a small nightclub and its owner for copyright infringement. The defendants raised copyright misuse as an affirmative defense, and they filed an antitrust counterclaim. The counterclaim alleged that an offer of a per piece license to a small nightclub was a "sham" because such a license could not satisfy its needs, and therefore left the nightclub with no alternative except to purchase a blanket license.

As Niro's notes, the court in *Moor-Law* denied BMI's motion for summary judgment, despite clearly proven infringements, because:

> defendants point to evidence tending to show (1) that after offering a per piece license, BMI declined to supply a list of compositions within its repertory, (2) that a BMI employee referred to BMI's standard requests as a "snow job," and (3) that BMI has apparently entered no license more limited than the repertory-wide blanket license with any [other small tavern owner].

484 F.Supp. at 367. Based on this evidence, the court found that the defendants' copyright misuse defense and antitrust counterclaim raised material issues of fact. Unlike the defendants in *Moor-Law,* however, Niro's points to no evidence to support its bald allegation of copyright misuse. Indeed, *Moor-Law* helps to highlight the insufficiency of Niro's affirmative defense of copyright misuse.

Since Niro's affirmative defenses are insufficient as a matter of law, much less established as a matter of law, its motion for summary judgment should be denied. Since BMI has proven infringement of twelve of the fourteen copyrighted songs, BMI's motion for summary judgment with respect to those twelve songs is granted, but denied with respect to the remaining two songs.

### III. *Injunctive Relief, Damages, Costs, and Attorney's Fees*

#### A. *Injunctive Relief*

■ One of the remedies afforded by the Copyright Act of 1976 is injunctive relief.

17 U.S.C. § 502. Injunctive relief is appropriate in this case because the nature of the infringement prevents BMI from obtaining an adequate remedy at law. *E.g., Broadcast Music, Inc. v. Dendrinos,* 220 U.S.P.Q. (BNA) 865, 869 (N.D.Ill.1983); *Boz Scaggs Music v. KND Corporation,* 491 F.Supp. 908, 914 (D.Conn.1980).

■ A permanent injunction is especially appropriate where a threat of continuing infringement exists. *See, e.g., Broadcast Music, Inc. v. Dendrinos,* 220 U.S.P.Q. (BNA) at 869. The threat of continuing infringement is substantial in the present case. Niro's provided unauthorized performances of copyrighted musical compositions on its premises after receiving oral and written notices of infringement and demands to stop such infringement from BMI. This behavior indicates a willful disregard of copyrights held by BMI and should be permanently enjoined.

#### B. *Statutory Damages*

■ BMI has elected and is entitled to statutory damages of not less than $250.00 nor more than $10,000.00 for each of the twelve copyright infringements for which we have found that BMI is entitled to summary judgment in this case. *See* 17 U.S.C. § 504(c); *Big Sky Music v. Todd,* 388 F.Supp. 498, 501 (S.D.Ga.1974). *See also Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288, 1296 (D.R.I.1982). Within the statutory bounds, the amount of damages is within the court's discretion. *E.g., Quinto v. Legal Times of Washington, Inc.,* 511 F.Supp. 579, 582 (D.D.C.1981).

■ BMI has asked for $10,000.00 for each infringement. We believe, however, that that amount is excessive. Instead, we are persuaded that $500.00 per infringement is an effective deterrent for a willful infringer in Niro's position.

#### C. *Costs and Attorney's Fees*

■ A plaintiff is entitled to recover costs and attorney's fees for willful copy-

right infringement. 17 U.S.C. § 505; *Lauratex Textile Corporation v. Allton Knitting Mills, Inc.*, 517 F.Supp. 900, 904 (S.D. N.Y.1981); *Boz Scaggs Music v. KND Corporation*, 491 F.Supp. at 915. In the present case, an award of costs and reasonable attorney's fees is justified because if Niro's had heeded BMI's warnings either to enter a license agreement or to stop playing copyrighted music, this litigation would have been wholly unnecessary. In addition, Niro's repeatedly rebuffed offers to resolve this dispute prior to the commencement of litigation. *See Boz Scaggs Music v. KND Corporation*, 491 F.Supp. at 915. Thus, Niro's was not an innocent infringer, and costs and reasonable attorney's fees are appropriate.

### Conclusion

For the reasons stated above, BMI's motion for summary judgment is granted with respect to twelve of the fourteen claimed infringements and denied with respect to the remaining two, and Niro's motion for summary judgment is denied. Accordingly, we permanently enjoin Niro's from playing music for which BMI holds the copyright on its premises without obtaining consent or a license from BMI. We order Niro's to pay BMI $6,000.00 in statutory damages, and costs and reasonable attorney's fees. BMI should submit affidavits detailing the amount of costs and attorney's fees incurred in prosecuting this action within fourteen days after receiving notice of this decision. Niro's should file any objections to BMI's submissions within fourteen days thereafter.