**ILLINOIS BELL TELEPHONE COMPANY, Plaintiff,**

v.

**HAINES AND COMPANY, INC., Haines Criss + Cross Publishers, Inc., William K. Haines, Sr., and William K. Haines, Jr., Defendants.**

**HAINES AND COMPANY, INC., Haines Criss + Cross Publishers, Inc., Counterclaimants,**

v.

**ILLINOIS BELL TELEPHONE COMPANY, Ameritech Publishing, Inc., Ameritech Publishing of Illinois, Inc., The Reuben H. Donnelley Corporation, and AM–DON, Counter-defendants.**

No. 85 C 7644.

United States District Court, N.D. Illinois, E.D.

May 11, 1989.

L. Bow Pritchett, Ronald E. Cundiff, James R. Bryant, Jr., Illinois Bell Telephone Co., Chicago, Ill., for plaintiff Illinois Bell Telephone Co. and counter-defendant Ameritech Publishing, Inc.

Jeremiah D. McAuliffe, Edward G. Wierzbicki, Pattishall, McAuliffe & Hofstetter, Chicago, Ill., for defendants and cross-claimants Haines and Co., Inc., and Haines Criss + Cross Publishers, Inc.

Byron Gregory, Mark Rabinowitz, Michelle C. Burke, McDermott, Will & Emery, Chicago, Ill., for counter-defendants The Reuben H. Donnelley Corp., Ameritech Publishing of Illinois, Inc. and AM–DON.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiff Illinois Bell Telephone Company ("IBT") filed this copyright infringement action against defendants Haines and Company, Inc., Haines Criss + Cross Publishers, Inc. (collectively "Haines"), William K. Haines, Sr. and William K. Haines, Jr. Haines filed a counterclaim against IBT, Ameritech Publishing, Inc. ("Ameritech"), Ameritech Publishing of Illinois, Inc. ("Ameritech–Illinois"), The Reuben H. Donnelley Corporation ("Donnelley"), and AM–DON (collectively "counter-defendants") alleging violations of Sections 1 and 2 of the Sherman Anti–Trust Act (15 U.S.C. §§ 1 and 2), Section 4 of the Clayton Act (15 U.S.C. § 15), and the Illinois Antitrust Act (Ill. Rev. Stat. ch. 38 ¶¶ 60–3 and 60–7). On April 13, 1988, this court granted IBT's motion for summary judgment, holding that IBT has a valid copyright interest in its telephone directories and that Haines' 1982 and 1983 directories infringed IBT's copyrights. *Illinois Bell Telephone Company v. Haines,* 683 F.Supp. 1204 (N.D.Ill. 1988). IBT currently moves for summary judgment on damages, attorneys' fees and injunctive relief. Counter-defendants move for summary judgment on Haines' counterclaims.

## FACTS

IBT is a public utility that provides telephone service. IBT is the only source for names, addresses and telephone numbers of residents and businesses in the Chicago area. McDowall Dep. at 54–55, 71–74, 80–81. IBT licenses its directory information primarily to two groups of publishers. One group publishes street address directories, without Yellow Pages advertising. Haines and Donnelley (through AM–DON) are the only two publishers of street address directories in the Chicago area. Melton Dep. at 41; O'Brien Dep. at 24, 28, 41; Haines' memo. at 19. A second group publishes co-bound directories, or alphabetical directories with Yellow Pages advertising. The markets are distinct; the second group does not compete with the first. Haines' memo. at 2.

Haines publishes cross-reference street address directories under the trademark Criss + Cross. The directories contain a street address and telephone numerical directory. Haines publishes 54 street address directories in major metropolitan areas of the country. Haines' memo. at 5. It began publishing Chicago-area directories in 1969. Haines and IBT entered into a licensing agreement, renewed each year from 1971 through 1980, whereby IBT provided Haines with pre-publication advance listings from IBT's Chicago-area directories on a cost per listing basis. IBT allegedly charged Haines the same price per listing as co-bound publishers. *Id.* at 8. In 1971, Haines paid IBT $.01 per listing. From 1974–81, Haines paid $.0125 per listing. In 1981, IBT raised the price to $.028 per listing. Haines chose not to renew its licensing agreement with IBT in 1982, but continued to utilize IBT's published directories to obtain listing information.

IBT also has a contractual relationship to provide listing information to Donnelley, Haines' only competitor in the Chicago street address directory market. O'Brien Dep. at 24, 38. Donnelley originally obtained listing information from IBT under a directory publishing agreement dated June 26, 1966; the agreement remained in effect through January 1, 1985. Donnelley, Am-

eritech–Illinois, and AM–DON Rule 12 statement at ¶ 11. IBT provided customer information to Donnelley, and Donnelley solicited those customers for advertising in the Yellow Pages. The Yellow Pages were then co-bound with IBT's white page directory. Arden Ex. G at 5. Under a 1971 amendment to the agreement, IBT provided Donnelley with billing and collection services for street address directories. The agreement did not allocate the amounts charged for subscriber information, billing and collection services. Donnelley memo. at 11. The total cost to Donnelley was calculated by a formula that included Donnelley's revenues and sales costs. O'Brien Ex. 10 at 4.

In July 1984, IBT entered into a ten-year directory agreement with Donnelley, Ameritech, Ameritech–Illinois and AM–DON. The agreement apparently was approved by the Illinois Commerce Commission. Arden Ex. G (transcript of hearing on IBT's petition for approval, Aug. 15, 1984). The agreement provides that IBT will furnish all subscriber information, billing and collecting services for directories to be published by AM–DON (a partnership between Donnelley and Ameritech–Illinois) and prepared and marketed by Donnelley. O'Brien Ex. 12; Haines memo. at 19. The agreement sets one charge for all services provided by IBT to AM–DON, rather than a price per listing. For 1985, IBT received $49.5 million; for 1986 through 1994, IBT receives a minimum of $75 million annually. O'Brien Ex. 12 at 34. The agreement does not restrict IBT's alternative uses of the listing information during the contract term. Arden Ex. G at 37–38.

Haines contends that IBT, Ameritech, Ameritech–Illinois, Donnelley and AM–DON misused IBT's copyright to restrain trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and conspired to monopolize, attempted to monopolize, and monopolized the market for street address directories in the Chicago area in violation of Section 2 of the Sherman Act (15 U.S.C. § 2). Haines also charges that counter-defendants' conduct violated the analogous provisions of the Illinois Antitrust Act (Ill.

Rev. Stat. ch. 38 ¶ 60–3) and Section 4 of the Clayton Act (15 U.S.C. § 15).

## DISCUSSION

■ A party is entitled to judgment where the pleadings, depositions, affidavits and other supporting materials show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is appropriate in antitrust litigation unless the non-movant presents sufficient evidence to survive a motion for directed verdict. *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473, 476 (7th Cir.1988) (the mere existence of a triable issue is no longer sufficient). Fed. R.Civ.P. 56(c) mandates the entry of summary judgment against parties who fail to establish the existence of an essential element of their case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

I. IBT's Motion for Summary Judgment on Statutory Damages, Attorneys' Fees and Injunctive Relief

This court previously ruled that Haines' 1983 and 1984 directories infringe the copyrights of IBT's 1982 and 1983 directories. *Illinois Bell Telephone Co. v. Haines and Co.,* 683 F.Supp. at 1210. IBT moves for summary judgment on damages, attorneys' fees and injunctive relief.

*Damages*

■ An infringer of a copyright is liable for either the copyright owner's actual damages and any additional profits realized by the infringer, or statutory damages. 17 U.S.C. § 504(a). Under the statute in existence at the time of the infringement, statutory damages were allocated as follows:

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect ... an award of statutory damages ... in a sum of not less than $250 or more than $10,000 as the court considers just ...

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discre-

tion may increase the award of statutory damages to a sum of not more than $50,000.

17 U.S.C. § 504(c). In a statutory award, the amount of damages is within the court's discretion. *Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F.Supp. 958, 963 (N.D. Ill.1985).

IBT seeks statutory damages for infringement of 34 editions of IBT directories published in 1982 and 1983. IBT's memo. at 2–3. Haines claims that it used only 14 editions of IBT's directories per year (or 28 directories) as references for Haines' 1983 and 1984 directories. Haines memo. at 2. Appendix A to the October 1981 license agreement between IBT and Haines, as well as correspondence from IBT in 1982 and 1983, lists 14 regional directories provided to and used by Haines. *See* McDowall Dec., Ex. B. IBT calculates lost revenues for 1983 and 1984 by quantifying listings for 14 regions. *Id.,* Ex. C. Although three directories are published twice annually, IBT's records indicate that Haines was billed once per year for these regions. Haines maintains that it used only one edition of each directory per year. McGeorge Decl. at ¶ 2. There is no evidence that Haines infringed the additional publication each year. Therefore, IBT is entitled to statutory damages for infringement of 14 directories for both 1983 and 1984, or for 28 acts of infringement.

■ To determine the amount of statutory damages for copyright infringement, the court considers the willfulness of defendant's conduct and the deterrent value of the sanction imposed. *International Korwin Corp. v. Kowalczyk*, 665 F.Supp. 652, *aff'd,* 855 F.2d 375 (N.D. Ill.1987). "Willful" means acting with knowledge that one's conduct constitutes an infringement. *See* 3 Nimmer § 14.04[B][3] at 14–28. Proof of actual knowledge of the infringement is not necessary; reckless disregard for the copyright holder's rights may establish knowledge of the infringement. *See id.* at 380 n. 10.

IBT claims Haines willfully infringed its copyright. Haines paid for the listing information for almost ten years before it elected not to renew the license agreement. Haines continued to use IBT's published directories despite correspondence from IBT in April 1983 and June 1984, demanding restitution and ordering Haines to cease using the listings. McDowall Decl. at Ex. C, F.

Haines maintains it did not willfully infringe because it acted under a good faith belief that its conduct did not constitute infringement. Haines' memo. at 12. Haines argues that licenses previously were not required to publish telephone company listings in street address directories, and that copyright law concerning the protecting of compilations is unsettled. *Id.* at 12–14. Haines allegedly elected to enter into the license agreement with IBT to obtain pre-publication information. The license agreement between IBT and Haines does not contain a provision that binds Haines to acknowledge IBT's copyright. Haines claims it was assured by its attorney that the agreement did not preclude its right to contest the validity of IBT's copyright at a later date. *Id.* at 11. An opinion letter from Haines' counsel prepared May 13, 1970 is submitted. *See* Haines Decl. at ¶ 7 and Ex. D.

Haines' contention that it acted in good faith and did not willfully violate IBT's copyright is a question of fact. *See International Korwin Corp. v. Kowalczyk*, 855 F.2d at 379–80. The record supports more than one inference and raises a genuine issue of fact as to Haines' willfulness. The court will not weigh the evidence on a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

■ Although the court cannot determine whether Haines' infringement was willful based upon the record, IBT requests that the court calculate statutory damages under 17 U.S.C. § 504(c)(1). This section authorizes an award of $250 to $10,000 per infringement without requiring a finding of willfulness. IBT seeks $10,000 for each of the 28 infringements. IBT's memo. at 8 and n. 5. The statutory rule compels restitution of profit and reparation of injury

and is also designed to discourage wrongful conduct. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952).

Had Haines obtained the listings by means of the licensing agreement, it would have paid $55,555.78 for listings in 1983 and $61,904.27 in 1984, at a total cost to Haines of $117,020.05. By its own accounting, Haines recognized $82,132 net income from the sale of its directories in 1983, and $54,312 in 1984, for a total profit of $136,444. *See* Haines' answers to IBT's interrogatories, Appendix, p. 1. To ensure that Haines did not profit from violating the copyright laws, and to discourage future violations by making violation more costly than adherence to the law, the court finds that an award of $8250 per violation—approximately twice the licensing fee for IBT's information used in Haines' 1983 and 1984 directories—is appropriate. Having committed 28 acts of infringement, Haines is ordered to pay IBT $231,000 in statutory damages.

*Attorneys' Fees*

IBT seeks reasonable attorneys' fees and costs. The Copyright Act authorizes the court to award full costs and reasonable attorneys' fees to the prevailing party. 17 U.S.C. § 505. The statute does not require the court to find willfulness on the part of defendants as a predicate to awarding fees. *International Korwin Corp. v. Kowalczyk*, 855 F.2d at 384. Fees are awarded where plaintiff gives the defendant an opportunity to resolve the dispute prior to commencement of litigation. *See, e.g., Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F.Supp. 958, 964 (N.D.Ill. 1985) (award of costs and reasonable attorneys' fees is justified because if defendant heeded plaintiff's warnings either to enter a license agreement or stop playing copyrighted music, litigation would have been unnecessary).

IBT contacted Haines in April 1983 and June 1984 after the termination of the license agreement to advise that IBT deemed Haines' use of IBT directories to constitute copyright infringement. IBT invited Haines to make restitution and thereby avoid litigation. McDowall Decl. ¶¶ 5, 6 and Ex. C, F. Haines made no attempt to resolve the matter with IBT. Had Haines elected to discuss the charges with IBT, this litigation may not have been necessary. An award of IBT's costs and reasonable attorneys' fees is appropriate.

*Injunctive Relief*

The Copyright Act empowers a court to grant injunctions on terms deemed reasonable to prevent or restrain infringement of a copyright. 17 U.S.C. § 502(a). An injunction is appropriate when defendant's infringing activities have continued for an extended period of time and it appears that, absent a court order, defendant will continue to infringe plaintiff's copyright. *See International Korwin Corp. v. Kowalczyk*, 665 F.Supp. 652, 658 (N.D. Ill. 1987), *aff'd*, 855 F.2d 375 (7th Cir.1988). A permanent injunction is particularly appropriate where a threat of continuing infringement exists. *Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F.Supp. at 963.

The record establishes that Haines used published IBT directories in preparing its 1985, 1986 and 1987 directories. *See* McGeorge Dep. at 62–70. Haines continued to use the IBT directories despite written notices of infringement and demands to stop. In his declaration, McGeorge concedes that Haines' Chicago area directories "use information appearing in [IBT's] alphabetical telephone directories." McGeorge Decl. at ¶ 39. Therefore, the unauthorized use of IBT's directories has continued beyond infringement of IBT's 1982 and 1983 directories. The threat of continuing infringement warrants a permanent injunction. *See Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F.Supp. at 963.

II. Counter-defendants' Motion for Summary Judgment on Haines' Counterclaim

*Section 1 of the Sherman Act*

Count III alleges counter-defendants combined and conspired to use the listing information to restrain trade in the Chicago area street address directory mar-

ket in violation of Section 1 of the Sherman Act. Counterclaim ¶ 22. Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States...." 15 U.S.C. § 1. To establish a Section 1 claim, Haines must prove (1) a conspiracy in restraint of trade, (2) resulting anticompetitive effects, and (3) antitrust injury. *Richard Hoffman Corp. v. Integrated Bldg. Systems*, 610 F.Supp. 19, 22 (N.D. Ill.1985) citing *Havoco of America, Ltd. v. Shell Oil Co.*, 626 F.2d 549, 554–57 (7th Cir.1980). Allegations of restraint of trade must be supported by significant probative evidence in order to withstand a motion for summary judgment. *See First National Bank v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The court applies a rule of reason analysis and weighs all the circumstances of a case to determine whether a practice unreasonably restrains competition. *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1283 (7th Cir.1983).

Haines claims that counter-defendants entered into various agreements with the purpose and effect of monopolizing, foreclosing and eliminating competition in the street address directory market. Counterclaim ¶¶ 13, 23. IBT allegedly provides subscriber information and other services to Donnelley under terms more favorable than those offered to Haines. Haines' memo. at 2. In return, IBT allegedly receives proceeds from the sale of Donnelley's directories, in excess of license fees. *Id.* at 4.

Under a rule of reason analysis, Haines fails to establish that counter-defendants conspired to restrain trade, or otherwise engaged in illegal joint activity outside of the licensing agreement. On its face, the ten-year licensing agreement between IBT and counter-defendants is legal and was approved by the Illinois Commerce Commission. IBT agreed to perform services for counter-defendants, for which it would be paid. The contract does not constitute an exclusive licensing agreement. The evidence does not establish that the agree-

ment went beyond what was reasonably necessary to effectuate the license or that it unreasonably restricted competitive conditions. Haines has not raised a genuine issue of fact concerning the legality of counter-defendants' joint activity or established that the joint activity had an anticompetitive impact. *Contrast Instructional Systems Dev. v. Aetna Casualty and Surety Co.*, 817 F.2d 639, 645–46 (10th Cir.1987) (evidence that agreement went beyond what was reasonably necessary to effectuate a trademark license and divided product market raised factual issue as to legality of agreement).

No evidence indicates that counter-defendants participated in or otherwise affected IBT's decisions concerning the sale of listing information to Haines or other publishers. The agreement does not restrict IBT's alternate uses of the listing information. Any use of IBT's listing information to restrain trade in the street address directory market in the Chicago area resulted from IBT's independent action. Independent action cannot constitute a Section 1 violation. *See Famous Brands, Inc. v. David Sherman Corp.*, 814 F.2d 517, 523 (8th Cir.1987). There is no genuine issue of material fact that counter-defendants violated Section 1 of the Sherman Act.

### Section 2 of the Sherman Act

In Counts I, II and III of the counterclaim, Haines contends that counter-defendants violated Section 2 of the Sherman Act by attempting to monopolize, conspiring to monopolize, and monopolizing the use of the listing information in the street address directory market in the Chicago metropolitan area. Counterclaim ¶¶ 15, 20, 27. Section 2 of the Sherman Act renders

[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states ... guilty of a misdemeanor.

15 U.S.C. § 2.

To prove monopolization, Haines must show:

(1) that counter-defendants possess monopoly power, or the power to control output and prices in the relevant market, and

(2) that counter-defendants willfully engaged in conduct designed to acquire, maintain or enhance its monopoly power.

*Chillicothe Sand & Gravel Co. v. Martin Marietta Corp.*, 615 F.2d 427, 430 (7th Cir.1980). To establish a claim for attempted monopolization, Haines must show:

(1) specific intent to control prices or destroy competition with respect to a part of commerce;

(2) predatory or anticompetitive conduct directed to accomplishing the unlawful purpose; and

(3) a dangerous probability of success.

*Great Escape, Inc. v. Union City Body Co., Inc.*, 791 F.2d 532, 540 (7th Cir.1986). To prove counter-defendants conspired to monopolize, Haines must show:

(1) the existence of a combination or conspiracy;

(2) overt acts in furtherance of the conspiracy;

(3) an effect upon a substantial amount of interstate commerce; and

(4) the existence of specific intent to monopolize.

*Id.* at 540–41. Section 2 offenses require evidence of a specific intent to monopolize. *Id.* The mere intention to exclude competition and to expand one's own business is not sufficient to prove a specific intent to monopolize. *Id.* Specific intent may be inferred from predatory conduct, or conduct that is in itself an independent violation of the antitrust laws or that has no legitimate business justification other than to destroy or damage competition. *Id.*

Counter-defendants argue that Haines has failed to present evidence of a specific intent to monopolize or predatory conduct. To establish predatory conduct, Haines alleges that counter-defendants entered into an agreement whereby Donnelley would obtain listing information at a lower cost than that charged to Haines. Counterclaim ¶ 13(a).

The record does not establish that Donnelley paid less for listing information than Haines. In 1983, IBT billed Haines $55,-155.78 for 1,968,421 listings at .028 cents per listing. In 1984, IBT billed Haines $61,904.27 for 1,996,912 listings at .031 cents per listing. McDowall Decl. at ¶¶ 4–6 and Ex. B and C. Donnelley paid $800,725 for listings, billing and collection services for its 1983 directories. Donnelley paid $914,947 for listings, billing and collection services for its 1984 directories. *Id.* at ¶ 9. Although Donnelley was not billed on a per listing basis, the amounts charged do not support an inference that Donnelley paid less for IBT listings in 1983 and 1984 than Haines paid for the same listings.

Haines' contention that, under the terms of its agreement with IBT, Donnelley is guaranteed a profit (and therefore pays less for listing information) is not supported by the record. *See* O'Brien Dep. at 75, 80. Prior to 1985, Donnelley was provided with listings and paid IBT "the difference between Donnelley's gross revenues and its costs, including a fixed percentage of those revenues...." O'Brien Decl. at ¶ 5. Under the ten-year agreement executed in July 1984, Donnelley (through AM–DON, its partnership with Ameritech–Illinois) agreed to pay IBT at least $75 million per year. O'Brien Dep., Ex. 12 at 37.

Haines contends that the high price charged for the listing information would put Haines out of business and deny Haines access to an essential facility. An essential facility is one that cannot reasonably be duplicated and is necessary to compete. *Fishman v. Estate of Wirtz*, 807 F.2d 520, 539 (7th Cir.1986). The essential facilities doctrine imposes upon the controller of an essential facility the obligation to make the facility available to competitors on nondiscriminatory terms. *Id.*

Assuming the listing for street address directories constitutes an essential facility, Haines has not shown that IBT discriminated against Haines as compared with other publishers. Haines obtains listing information under IBT's standard licensing agreement. IBT charges uniform rates to

all directory publishers who receive listings under the standard licensing agreement. McDowall Dep. at 37, 51–52; Winton Dep. at 42, 96. Since 1971, IBT has charged Haines the same price per listing as it charges non-affiliated co-bound directory publishers. McDowall Dep. at 33, 37, 51–52, 71–74, 80; Winton Dep. at 96. Donnelley does not receive its listings from IBT under a standard licensing agreement. IBT/Ameritech's reply at 4. There is no evidence to suggest that Haines ever sought the services or contract terms IBT provides counter-defendants, for which counter-defendants pay IBT $75 million annually.

Haines argues that its costs ultimately are greater because, unlike co-bound directory publishers, Haines cannot simply reproduce the listings but must conduct extensive independent research, editing, verification, correction and rearrangement of information. Haines' memo. at 7. IBT does not dictate the format of the directories that publishers produce. IBT/Ameritech's reply at 4. The record reflects that had Haines requested, IBT would have provided the listings in a different format and charged Haines for the service. McDowall Dep. at 47, 48, 53.

Haines contends that IBT unreasonably raised its rates for co-bound directory publishers. Between 1981 and 1987, IBT allegedly increased its rates 2400% for residential listings and 3600% for business listings. W.K. Haines Decl. at ¶ 2; Hill Decl. at ¶ 6. IBT explains that the 1986 price increase was the result of IBT's conversion from cost-based pricing to market-based pricing. IBT/Ameritech's reply at 6. The evidence reflects that IBT's rates were well within the range of rates charged for listings by other telephone companies. *Id.;* Winton Dep. at 79–81. The evidence does not support Haines' contention that the prices charged under the standard licensing agreement were without legitimate business justification.

In addition to the price increases, Haines claims IBT discriminated against Haines by tying the sale of necessary listings to the purchase of unwanted listings. Haines'

memo. at 20. However, the record reflects that IBT provided listing information in the format specified by the publisher and calculated the rate accordingly. *See* Winton Dep. at 63–68. Lower rates are attributable to limited flexibility in a geographic area. *Id.* Haines chose the least costly option that did not entitle Haines to isolate specific geographic areas. IBT/Ameritech's memo. at 7; McDowall Decl. at ¶ 11. Although co-bound publishers paid IBT only for listings actually used, that billing arrangement was prior to the production of the information on magnetic tape. McDowall Dep. at 82. When the information was compiled on magnetic tape in approximately 1982, publishers were billed for everything provided on the tape. *Id.* at 82, 85.

■■■■ By definition, a tying arrangement requires two separate products. *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473, 477 (7th Cir.1988) (noting the demand for pathological services was not distinctly different from the demand for hospital facilities and services and did not create a separate market). Haines' contention that listing information useful to Haines and information that it cannot use in its directories constitute two separate products is without merit. Without two products, there can be no illegal tying arrangement.

Haines alleges that IBT provided Donnelley with delivery and billing services not offered to Haines. Counterclaim ¶ 13(b). There is no evidence that IBT ever provided delivery service to an outside entity. McDowall Decl. at ¶ 12. Moreover, according to IBT's records, Haines never requested billing or delivery services. *Id.;* IBT/Ameritech's Rule 12 statement at ¶ 3.

■■■■ Haines also argues that IBT's claimed copyright in the information compiled for street address directories—information in the public domain—constitutes predatory conduct. Counterclaim ¶ 13(c). A good faith attempt to protect a copyright interest, even if unsuccessful, is a defense to an action for attempted monopolization. *Toro Co. v. R. & R. Products Co.,* 600 F.Supp. 400, 401 (D. Minn.1984), *aff'd,* 787

F.2d 1208 (8th Cir.1986). This court previously ruled that IBT has a valid copyright for its 1982 and 1983 directories. *Illinois Bell Telephone Company v. Haines & Co.*, 683 F.Supp. 1204 (N.D. Ill.1988). Therefore, the filing of the underlying copyright action does not constitute predatory conduct.

Haines proffers no evidence to show counter-defendants specifically intended to control prices or destroy competition. Haines also fails to raise a genuine issue of fact that counter-defendants engaged in predatory conduct. Therefore, counter-defendants are entitled to judgment as a matter of law on Haines' claims asserted under Section 2 of the Sherman Act.

Because the counterclaim and supporting evidence fail to raise issues of fact that counter-defendants violated Sections 1 and 2 of the Sherman Act, the evidence does not support Haines' claims under the Illinois Antitrust Act (Ill.Rev.Stat. ch. 38 ¶¶ 60-3, 60-7). *See Marrese v. Am. Academy Ortho. Surgeons*, 726 F.2d 1150, 1155 (7th Cir.1984), *rev'd on other grounds*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (the same standard is used to determine liability under both federal and state antitrust law). Similarly, the evidence proffered does not support a claim under Section 4 of the Clayton Act, which provides a right of action for persons injured by violation of the antitrust laws. 15 U.S.C. § 15. Counter-defendants' motion for summary judgment on the counterclaim is granted.

### CONCLUSION

IBT's motion for summary judgment on damages, attorneys' fees and injunctive relief is granted with respect to 28 infringements in 1983 and 1984. Haines is ordered to pay IBT statutory damages in the amount of $231,000. IBT is directed to submit a petition for reasonable costs and attorneys' fees incurred in prosecuting this action by May 31, 1989; Haines may file any objections by June 20, 1989. Haines is permanently enjoined from using IBT's directories or listing information without a license or IBT's consent.

Counter-defendants' motion for summary judgment on the counterclaim is granted.