BROADCAST MUSIC, INC.,
et al., Plaintiffs,

v.

DeGALLO, INC., d/b/a Club Cocomo and
Mario DePalola, Defendants.

Civ. A. No. 94–3083.

United States District Court,
D. New Jersey.

Jan. 3, 1995.

Lindsey H. Taylor, Friedman Siegelbaum, Roseland, NJ, for plaintiff.

No appearance filed on behalf of defendants.

### OPINION

WOLIN, District Judge.

This matter is opened before the Court upon the motion of plaintiff Broadcast Music Inc. ("BMI"), and various copyright owners, for a default judgment against defendants DeGallo, Inc., doing business as Club Cocomo, and Mario DePalola. This matter has been decided upon the written submissions of the plaintiff, pursuant to Federal Rule of Civil Procedure 78. For the reasons given below, the Court will grant plaintiff's motion and enter a default judgment in this case. However, plaintiff's request for statutory damages will be granted only in part. The request for attorneys fees will be denied pending documentation by plaintiff of the fees actually incurred.

### BACKGROUND

The plaintiff's papers disclose the following facts. Plaintiff is in the business of licensing the right to publicly perform copyrighted musical compositions. Through agreements with the plaintiff copyright owners, BMI has acquired the right to license their musical works. The licenses are granted to concert halls, hotels, nightclubs, etc. in exchange for blanket license fees.

Defendants operate a nightclub in Lyndhurst, New Jersey, called the Club Cocomo. In March 1993, BMI learned that plaintiffs' copyrighted songs were being performed by live performers and in recorded form at the nightclub. Declaration of Lawrence E. Stevens, dated November 16, 1994 ("Stevens Aff."). Over a period extending from August 11, 1993 to March 11, 1994, BMI sent numerous letters to defendants informing them that they were violating the copyrights in the plaintiffs' songs, and requesting that defendants enter into a standard licensing agreement and pay a fee for a blanket license. *Id.*, Exhibits A–G. Representatives of BMI called the Club Cocomo on the telephone and visited the establishment several times. *Id.* Despite these efforts, defendants did not enter into a licensing agreement with plaintiffs. A representative

from BMI attended the Club Cocomo in March 1994 and heard seven of the plaintiffs' songs being performed. Declaration of Christopher Donohue, dated November 22, 1994.

Based on the foregoing facts, plaintiffs' filed their complaint in this Court seeking statutory damages of $2,000 for each of the seven infringing performances heard by Donohue for a total of $14,000, pursuant to 17 U.S.C. § 504(c)(2). They also ask for a permanent injunction against further infringement of their copyrights, pursuant to 17 U.S.C. § 502. Finally, they seek costs and reasonable attorneys fees, as provided by 17 U.S.C. § 505.

### DISCUSSION

Based on the plaintiffs' papers cited above, and after review of the record as a whole, the Court finds that plaintiffs have properly supported their motion for a default judgment. Defendant has had notice of the action and of this motion as prescribed the Rules. The facts alleged in the pleadings are assumed to be true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.1990), and, in any event, are amply corroborated by plaintiffs' affidavits. The Court finds that defendant has infringed plaintiffs' copyrights in the songs listed in Donohue's declaration. Moreover, the Court finds that the infringement was willful as contemplated by 17 U.S.C. § 504(c)(2). Accordingly, the Court will assess statutory damages against defendants, jointly and severally. Furthermore, because there appears to be a danger of continuing infringement, the Court will permanently enjoin defendants from further violations of the copyrights. *See Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F.Supp. 958, 963 (N.D.Ill.1985). However, because the damages are obviously not a sum certain, the Court must make its own determination as to the amount to be awarded. Fed.R.Civ.P. 55(b). The Court finds that the factual record before it in the form of affidavits and documentary evidence is sufficient to make this determination. Therefore, no Rule 55(b) hearing will be necessary in this case.

The Court does not concur with plaintiffs' assessment of the proper amount of the statutory penalty in this case. Congress has provided that a plaintiff may elect to receive statutory damages for infringement of a copyright in an amount not less than $500 per infringement, and not to exceed $20,000. *Id.* § 504(c)(1). Where the infringement is willful, the Court may augment the damages to $100,000. *Id.* § 504(c)(2). The district court has wide discretion as to the damages actually awarded. *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984); *see F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 231–32, 73 S.Ct. 222, 224–25, 97 L.Ed. 276 (1952). Where the infringement is willful, relevant factors include the amount of loss to the copyright holder and the need to deter future violations. *Rodgers v. Eighty Four Lumber Co.*, 623 F.Supp. 889, 892 (W.D.Pa.1985).

The Court's wide discretion in this field does not mean that it is without standards to guide it, however. The Court notes that the statute was designed to deal with infringers ranging from relatively small nightclubs, such as the one presented here, to large scale pirates, broadcasting across the country on electronic media. With due allowance for the level of culpability involved, the penalty must be proportionate to the extent of the infringement.

The Court must be guided, therefore, by cases in which other courts have assessed statutory damages against the owners of nightclubs, restaurants, private clubs, and other places open to the public, who have infringed copyrights in musical works by allowing them to be performed without paying the copyright holder a licensing fee. In surveying these cases, the Court observes that a rough measure may be derived by calculating the amount of damages awarded as a multiple of the licensing fee the copyright holder originally sought to make the infringer pay. Indeed, plaintiffs imply the appropriateness of basing the damages on the licensing fee avoided by the infringer when they argue that "[d]efendants should be 'put on notice

that it costs less to obey the copyright laws than to violate them.'" Plaintiff's Brief at 7 (quoting *Rodgers*, 623 F.Supp. at 892) (further citations omitted).

It appears that, in the narrow class of cases dealing with willful, unauthorized, musical performances in public establishments, the damages awards range from two times the licensing fee to five times the licensing fee.[1] *See Chi–Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir.1991) (three times the license fee); *Morley Music Co. v. Cafe Continental, Inc.*, 777 F.Supp. 1579 (S.D.Fla.1991) (three times the license fee); *Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F.Supp. 1257, 1264 (S.D.Tex.1989) (three times the license fee), *aff'd*, 915 F.2d 1567 (5th Cir.1990); *Rilting Music v. Speakeasy Enters., Inc.*, 706 F.Supp. 550, 557–58 (S.D.Ohio 1988) (slightly less than two times the license fee); *Golden Torch Music Corp. v. Pier III Cafe, Inc.*, 684 F.Supp. 772, 774 (D.Conn.1988) (five times the license fee); *Music City Music v. Alfa Foods, Ltd.*, 616 F.Supp. 1001 (E.D.Va.1985) (slightly more than two times the license fee). This list of cases does not constitute an exhaustive survey of performance infringement cases nationwide, but it does establish a rough baseline for what the other courts have done.

Plaintiffs calculated the amount they request by setting a price of $2,000 per work and multiplying it by the number of works heard by their representative during his visit to defendants' place of business. Where multiple copyrighted works are infringed the statutory maximum may be assessed for each work. *Walt Disney Co. v. Powell*, 897 F.2d 565 (D.C.Cir.1990). In the area of musical performance in a single public place, however, the Court does not feel that the practice of assessing a certain amount per work is always appropriate. Here plaintiff documents seven infringing performances. However, given the fact that virtually every copyrighted popular song in existence is subject to licensing by BMI or its sister organization ASCAP (American Society of Composers Authors and Publishers), the number of documented infringements is

---

1. These multipliers are approximate.

really just a function of how much time plaintiffs' representative wishes to spend in the Club Cocomo listening to the jukebox or band. Moreover, by its practice of blanket licensing, plaintiffs acknowledge that the value of the many performances can be reduced to a single figure. Thus, the number of works infringed is not a reliable indicator either of damage to the plaintiffs or of the culpability of the infringer in a case of unauthorized musical performances in a nightclub.

In this case, plaintiffs seek an award of $14,000 to penalize defendant for refusing to pay $702 as a licensing fee. Stevens Aff., Exhibit D. This is almost twenty times the amount defendants saved by refusing to pay the license fee. Considered as a multiple of the license fee, this award is well in excess of the general trend cited above. On the other hand, the Court must ensure that the statute's deterrent purposes are served. Where the license fee avoided is low, damages of only two or three times the license fee might yield an award insufficient to accomplish this purpose. Moreover, it would provide a disincentive for copyright owners and licensors to charge modest fees, thus distorting the true market value of the copyright.

### CONCLUSION

For the foregoing reasons, the Court will grant the plaintiffs' motion for a default judgment, but will reduce the amount of damages specified in plaintiffs' moving papers. The Court finds that the sum of $3,500 is the proper compromise between the various factors discussed above. It is substantially more that the license fee, and so will serve to put defendants on notice that they cannot ignore plaintiffs' statutory rights with impunity. However, at approximately five times the license fee, it is within the upper ranges of awards made by other courts on these facts, measured as a multiple of the amount defendant refused to pay.

Plaintiffs have provided a proposed order that includes an award for attorneys fees pursuant to 17 U.S.C. § 505. The amount to be awarded has been left blank. The Court will reserve judgment on this part of plaintiffs' motion. Plaintiffs will provide the Court with affidavits detailing the amount of time spent on this matter, a proposed hourly rate, and any other expenses and costs incurred.

An appropriate order is attached.

### *ORDER AND JUDGMENT*

In accordance with the Court's Opinion filed herewith,

It is on this 3d day of January, 1995,

ORDERED that plaintiffs' motion to enter a default judgment is granted; and it is further

ORDERED and ADJUDGED that plaintiffs are awarded damages pursuant to 17 U.S.C. § 504 and shall recover from defendants jointly and severally the amount of Three Thousand, Five Hundred Dollars ($3,500.00); and it is further

ORDERED that defendants, their agents, employees, and anyone acting under their permission or authority are hereby permanently enjoined from infringing the copyrighted musical compositions owned by plaintiffs or any copyrighted musical compositions licensed by defendant Broadcast Music, Inc.; and it is further

ORDERED that plaintiffs will provide to the Court affidavits in support of their request for an award of attorney's fees pursuant to 17 U.S.C. § 505.